UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF ) <br> HERMAN WHITFIELD, III, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF INDIANAPOLIS, ) <br> STEVEN SANCHEZ, ) <br> ADAM AHMAD, ) <br> MATTHEW VIRT, ) <br> DOMINIQUE CLARK, ) <br> JORDAN BULL, and ) <br> NICHOLAS MATHEW, ) <br> ) <br> DEFENDANTS. ) | NO. 1:22-cv-01246 <br><br> **Jury Trial Requested** |

## COMPLAINT

### I. Nature of Case

1. This wrongful death lawsuit seeks money damages against the City of Indianapolis and several of its police officers who needlessly tasered and then crushed the breath out of a man undergoing a mental health crisis, while callously ignoring his desperate repeated cries, "I can't breathe."

### II. Jurisdiction and Venue

2. This action is brought pursuant to 42 U.S.C. § 1983 and is premised on violations of the fourth amendment to the United States Constitution.

3. This Court has original subject matter jurisdiction of the federal questions presented pursuant to 28 U.S.C. §§1331 and 1343.

4. Venue is proper in this Court and Division, pursuant to 28 U.S.C. §1391, because the events giving rise to this action occurred in, and the defendants are residents of, Indianapolis, Indiana, which is in the Indianapolis Division of the Southern District of Indiana.

### III. Parties

5. Plaintiff, the Estate of Herman Whitfield, III, is a legal entity established pursuant to Indiana law and opened in the Marion Superior Court, Probate Division, in order to pursue the legal rights asserted in this case.

6. Defendant City of Indianapolis is located in Marion County, Indiana, and is a political subdivision of the State of Indiana. This municipal defendant is sued on plaintiff's federal claim and only for compensatory, not punitive, damages.

7. Defendants Steven Sanchez, Adam Ahmad, Matthew Virt, Dominique Clark, Jordan Bull, and Nicholas Mathew are adults and for all times relevant were employed as law enforcement officers by the City of Indianapolis. These defendants are sued only on plaintiff's federal claim and for both compensatory and punitive damages.

### IV. Facts

8. On March 25, 2022, Herman Whitfield III was at home undergoing a mental health crisis.

9. Mr. Whitfield was a 39-year-old African American accomplished concert pianist who never had a criminal record and did not have any weapons. He was non-violent and a gentle person.

10. Mr. Whitfield's mother telephoned 911 and asked for an ambulance to come to assist her and her husband in obtaining mental health care for their son.

11. Indianapolis police officers Steven Sanchez, Adam Ahmad, Matthew Virt, Dominique Clark, Jordan Bull, and Nicholas Mathew responded to the call.

12. When the Officers arrived Mrs. Whitfield answered the door.

13. One of the officers asked Mrs. Whitfield "everybody alright?" to which Mrs. Whitfield responded "yeah."

14. Mr. Whitfield's father asked the officers "where's the ambulance?" to which there was no reply.

15. The officers came into the house and spoke to Mr. Whitfield, but he was undergoing a mental health crisis and could not cogently respond to their questions.

16. At one point Mr. Whitfield was sitting naked on his bed. Officers asked him to put clothes on so he could go outside and be transported to the hospital.

17. Mr. Whitfield did not appear to understand the officers' instructions.

18. After about ten minutes, Mr. Whitfield got up from sitting on his bed and walked into the adjoining hallway, then into the adjoining kitchen, then turned the corner and entered the adjoining dining room.

19. Mr. Whitfield was unarmed, which the officers could plainly see.

20. Several officers followed Mr. Whitfield into the kitchen and into the dining room.

21. Officer Sanchez was waiting in the dining room with his taser pointed at the doorway and when Mr. Whitfield came into that room Officer Sanchez shot him with his taser, deploying it at least twice.

22. Mr. Whitfield collapsed to the dining room floor yelling "fire," fire," responding to the 50,000 volts of electricity pulsing through his body.

23. Mr. Whitfield had done nothing justifying Officer Sanchez shooting him with a taser in his own home. He had not threatened the officers verbally or physically, and because of his mental health crisis, was simply not responding to their demands that he get dressed and leave.

24. When Mr. Whitfield fell to the floor, he writhed in pain from the taser.

25. Four or five of the officers got on top of Mr. Whitfield.

26. At no time did Mr. Whitfield hit or kick or threaten any of the officers.

27. The officers quickly handcuffed Mr. Whitfield who was lying on his stomach with his hands cuffed behind his back.

28. The officers' body cam videos clearly reveal Mr. Whitfield gasping for breath and telling the officers at least three times: "I can't breathe."

29. The officers ignored Mr. Whitfield's desperate pleas for help.

30. The officers' body cam videos show that shortly after Mr. Whitfield cried, "I can't breathe," the third time, he did not move or breath at all, yet the officers continued to put weight on him for three to four minutes before medics arrived.

31. For over 25 years, the policing community has agreed that officers should not keep a restrained individual in the prone position because of the significant risk of positional asphyxia, i.e., suffocation because of body position.

32. The City of Indianapolis, just as most metropolitan police departments do, trains its officers not to leave arrestees in this position after handcuffing, but instead to quickly sit them up to facilitate breathing.

33. There is widespread agreement in the policing community that prone restraint creates a serious risk of positional asphyxia, and that this risk is exacerbated when officers apply pressure to an individual's back.

34. As a result, police departments across the country have instituted policies that direct officers to not put weight on a prone subject's back and instead to move prone individuals into a position that facilitates breathing as soon as they are restrained.

35. The risks of positional asphyxiation from being in such a position are well-known and documented.

36. Despite the widespread knowledge about positional asphyxiation, three to four of the officers continued to apply pressure to Mr. Whitfield's back after he was handcuffed and not moving and while he was prone on the floor.

37. Rather than quickly sitting Mr. Whitfield up, the officers left him lying on his stomach.

38. Ambulance personnel came into the house and instructed the officers to get Mr. Whitfield up off of his stomach.

39. Mr. Whitfield was unresponsive.

40. The ambulance personnel performed CPR on Mr. Whitfield, but he never regained consciousness.

41. Mr. Whitfield died because of the force used against him by the defendant officers.

42. The force used against Herman Whitfield was unreasonable, excessive, and deadly.

43. Mr. Whitfield needed professional mental health care, not the use of excessive force.

44. The City of Indianapolis has a mental health response unit in its police department trained to handle situations such as that experienced by the Whitfields, but pursuant to the City's policy and practice, the unit is only available during some of the hours of the day and not

| | |
|---|---|
| | in the early morning hours when it was needed by the Whitfields and other families and individuals undergoing mental health crises during those times. |
| 45. | The City's mental health unit is professionally trained to elicit appropriate responses from individuals such as Mr. Whitfield, without the use of force. |
| 46. | The City's mental health unit would not have used a taser to control Mr. Whitfield. |
| 47. | The City's mental health unit would not have restrained Mr. Whitfield behind his back and left him in a prone position after he had stated that he couldn't breathe and after he had stopped moving. |
| 48. | Pursuant to the City of Indianapolis's policy and practice, the individual defendant officers did not have the same training and policies and procedures utilized by the City's mental health response unit. |
| 49. | The City's above policies and practices were a responsible cause of how the individual defendant officers interacted with Mr. Whitfield and the fatal result that occurred. |
| 50. | The officers' actions were reckless and done with callous indifference to Mr. Whitfield's federally protected rights. |
| 51. | At all times relevant to this suit, the defendant officers were employed by the City of Indianapolis and acted within the course and scope of their employment as officers of the Indianapolis Metropolitan Police Department. |
| 52. | At all times relevant to this suit, the officers acted under color of state law. |

### V.    Claims

| | |
|---|---|
| 53. | The actions of the defendants constituted an unreasonable deadly seizure of Herman Whitfield using excessive force, in violation of the fourth amendment to the United States, actionable pursuant to 42 U.S.C.§1983. |

54. The Estate reserves the right to assert all legal theories of relief which the facts support pursuant to the pleading requirements of Fed. R. Civ. Pro. 8.

## VI. Jury Trial Requested

55. The Estate requests a jury trial on all claims.

## VII. Relief Requested

56. The Estate seeks all relief available under the law, including compensatory and punitive damages, attorney fees and costs, and all other appropriate relief.

Respectfully submitted,

Dated: June 21, 2022

*/s/ Israel Nunez Cruz*
Israel Nunez Cruz

*/s/ Richard A. Waples*
Richard A. Waples

Attorneys for Plaintiff

Israel Nunez Cruz
**CRUZ LAW FIRM**
148 E. Market Street, Suite 501
Indianapolis, Indiana 46204
TEL: (317) 423-9668
FAX: (317) 423-9677
EMAIL: icruzlawfirm@gmail.com

Richard A. Waples
**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, Indiana 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com