# EXHIBIT 2

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF INDIANA
 2                 INDIANAPOLIS DIVISION
 3
 4
 5   THE ESTATE OF HERMAN      )
     WHITFIELD, III,           )
 6                             )
         Plaintiff,            )
 7                             )
         v.                    ) NO.: 1:22-cv-01246-SEB-MJD
 8                             )
     THE CITY OF               )
 9   INDIANAPOLIS, STEVEN      )
     SANCHEZ, ADAM  AHMAD,     )
10   MATTHEW VIRT, DOMINIQUE   )
     CLARK, JORDAN BULL, AND   )
11   NICHOLAS MATHEW,          )
                               )
12       Defendants,           )
     _____)
13
14
15
16
                DEPOSITION OF CATHERINE CUMMINGS
17
            The deposition upon oral examination of
18      CATHERINE CUMMINGS, a witness produced and
        sworn before me, Andrea Wray, Notary Public in
19      and for the County of Hendricks, State of
        Indiana, taken on behalf of the Plaintiff at
20      111 Monument Circle, Suite 4350, Indianapolis,
        IN 46204, on the 22nd day of March, 2023,
21      scheduled to commence at 9:30 a.m., in
        accordance with Federal Rules of Civil
22      Procedure, with written notice as to time and
        place thereof.
23
24
25
```

1                    D E P O S I T I O N
2    Whereupon,
3                    CATHERINE CUMMINGS
4    was called as a witness, having been first duly sworn to
5    speak the truth, the whole truth, and nothing but the
6    truth, was examined and testified as follows:
7                         EXAMINATION
8    BY MR. WAPLES:
9        Q    Ms. Cummings, my name is Rich Waples.  I
10   represent the plaintiff in this case.
11            Could you please state and spell your last
12   name.
13       A    Sure.  It's Catherine, C-a-t-h-e-r-i-n-e,
14   Cummings, C-u-m-m-i-n-g-s.
15       Q    And what do you do, Ms. Cummings?
16       A    I am the Deputy Chief of Training, Policy, and
17   Oversight for the Indianapolis Metropolitan Police
18   Department.
19       Q    How long have you held that position?
20       A    This position?  Since September of 2021; so,
21   roughly 18 months.
22       Q    Okay.  Can you give me a little background
23   about yourself, both where you went to school and jobs
24   before you got on at the Department and then the
25   Department and then moving into the Department.

1  April 25th of 2022.
2              When were you first alerted about it and what
3  did you do in response?  If anything.
4              MR. OVERHOLT:  I mean, it's -- that's sort of
5       a complicated question.  I'm not sure what all
6       you're asking her.  Are you asking her --
7              MS. ZIEGLER:  A little louder, please, Tony.
8              MR. OVERHOLT:  I mean, are you asking her when
9       she got contacted?  Are you asking her -- what,
10      exactly?
11             MR. WAPLES:  I didn't think it was -- was it a
12      confusing question?
13 BY MR. WAPLES:
14      Q    When did you hear about it?  What did you do?
15      A    I didn't have any direct involvement at the --
16 at the time that the run occurred.  I was probably
17 notified as a matter of just being notified as a member
18 of the executive staff of -- of the run, but I didn't
19 respond to the scene.
20      Q    Were you involved at all in any review of the
21 actions of the officers?
22             MR. OVERHOLT:  You can answer.  You can answer
23      yes or no.
24      A    Yes.
25      Q    Okay.  And when was that?

1      MR. OVERHOLT:  Y- -- you can answer when you
2    first got involved, if you know.
3    A    So, I guess, to be open and honest about
4  involvement, I would have probably had some discussion
5  the next day -- not detailed discussion.  I would have
6  had basic conversation about who from Internal Affairs
7  responded to the scene, and that would have been it.
8    Q    Who would you have had those discussions with?
9    A    Likely, Captain Roehrig, who is the captain
10 over Internal Affairs.
11   Q    Can you spell his last name?
12   A    R-o-e-h-r-i-g.
13   Q    Okay.  Would those have been in-person
14 conversations, or e-mails, texts, or --
15   A    Probably over the telephone.
16   Q    -- telephone?  Okay.
17        Did you -- what did you learn about what had
18 happened at the scene?
19        MR. OVERHOLT:  I'm gonna object and instruct
20    the witness not to answer based on the deliberative
21    process and criminal-investigation privileges.
22   Q    Were you -- you were head of the training
23 section at that time, in April of 2022?
24   A    At -- in April of 2022, I was in the same
25 position that I am in now, and I'm the Deputy Chief of

1         instruct her not to answer.
2     Q   How did you form this opinion?
3         MR. OVERHOLT:  Let me think for a second.
4         I'm gonna object and instruct her not to
5     answer.
6     Q   Did you review the body-camera footage of the
7  incident?
8         MR. OVERHOLT:  I'm gonna object and instruct
9     her not to answer.
10        MS. ZIEGLER:  Tony, we can't hear you at all.
11    Sorry.
12        MR. OVERHOLT:  I'm gonna object and instruct
13    her not to answer.
14 BY MR. WAPLES:
15    Q   Have you communicated your opinion about
16 whether the officers' actions were consistent or
17 inconsistent with their training, to the Chief of
18 Police?
19        MR. OVERHOLT:  I'm gonna object and instruct
20    the witness not to answer.
21    Q   Have you communicated your opinion with
22 respect to whether the officers' actions, with respect
23 to Mr. Whitfield, were consistent or inconsistent with
24 their training, to anybody outside of the Department?
25        MR. OVERHOLT:  I'm gonna object and instruct


1    the witness not to answer.
2           MR. WAPLES:  What grounds would that be?
3           MR. OVERHOLT:  Because that could fall both
4    within the deliberative process and criminal-
5    investigation privileges because both of those
6    investigations are ongoing.
7           MR. WAPLES:  Well, I asked her about whether
8    she communicated her opinion to anybody outside of
9    IMPD.
10          MR. OVERHOLT:  Right, and based upon what you
11   questioned Mr. Adams about the other day, that
12   would include, according to you, communications
13   with the prosecutor's office.  And I don't want her
14   talking about whether there have been
15   communications with agencies outside of IMPD about
16   those investigations.
17   BY MR. WAPLES:
18      Q    Have you had communications with individuals
19   in the prosecutor's office about whether the actions of
20   the officers were consistent or inconsistent with their
21   training?
22          MR. OVERHOLT:  You can answer that one.
23      A    I have not.
24      Q    Have you committed your opinion about whether
25   the officers' actions were consistent or inconsistent

1 inconsistent with their training, correct?
2     MR. OVERHOLT: You can answer.
3 A   Correct.
4 Q   And we've already covered the fact that
5 whether the chief has expressed his opinion whether
6 their actions were consistent or inconsistent with
7 training or -- is -- is a question that I think your
8 lawyer is instructing you not to answer, correct?
9     MR. OVERHOLT: Yes, you can answer.
10 A   To the question of whether my lawyer has
11 instructed me not to answer, yes.
12 Q   Yeah.
13     Do you have an opinion about whether the
14 officers' actions, with respect to Herman Whitfield on
15 April 25th, 2022, were consistent or inconsistent with
16 IMPD policies?
17     MR. OVERHOLT: You can answer whether you have
18    an opinion.
19 A   I have an opinion.
20 Q   And what is that opinion?
21     MR. OVERHOLT: And I would object and instruct
22    her not to answer.
23     MR. WAPLES: And on what basis?
24     MR. OVERHOLT: That is based upon the
25    deliberative process and law enforcement

1 investigative privileges.
2 BY MR. WAPLES:
3 Q Do you know whether the Chief of Police,
4 Randall Taylor, has an opinion about whether the
5 officers' actions with respect to Herman Whitfield on
6 April 25th, 2022, were consistent or inconsistent with
7 IMPD policies?
8 MR. OVERHOLT: You can answer whether you
9 know. So, that's a yes or no.
10 A I don't know.
11 Q He's never expressed an opinion to you with
12 respect to that?
13 MR. OVERHOLT: You can answer that.
14 A I'm trying to recall if he's expressed an
15 opinion to me specifically about that, and I don't
16 recall having a conversation with the Chief of Police
17 specifically about training.
18 Q I asked about policies -- whether the
19 officers' actions were consistent or inconsistent with
20 IMPD policies.
21 Has -- are you aware of Chief Taylor ever
22 expressing an opinion, whether they were -- the
23 officers' actions were consistent or inconsistent with
24 IMPD policies?
25 A I don't believe I've had a conversation with

1  the Chief of Police specifically about his opinion as to
2  whether the officers were consistent with policy.
3     Q   And I'm not asking you about whether you --
4  well, partly, I asked you whether you had a conversation
5  with him, but I asked you if you were aware of him ever
6  expressing such an opinion.
7     A   I am not --
8     Q   Whether it's to you or someone else or that
9  you were apprized of.
10    A   Because I am not -- because I don't recall
11 whether he has expressed and I don't believe I've had a
12 conversation with him specifically about that, I am not
13 aware of him expressing that to anyone else.
14    Q   Okay.  Are you part of any investigation, the
15 criminal or administrative investigation, with respect
16 to whether the officers' actions were consistent or
17 inconsistent with their training or policies or the
18 criminal law?
19        MR. OVERHOLT:  You can answer that.
20    A   I am a part of an investigation, yes.
21    Q   In what way?
22        MR. OVERHOLT:  You can answer that.
23    A   I -- as part of my duties as the Deputy Chief
24 of Training, Policy, and Oversight, I oversee Internal
25 Affairs.

1     Q    And Internal Affairs has an investigation with
2 re- -- has investigated whether the officers' actions
3 were consistent or inconsistent with --
4     MR. OVERHOLT:  You -- you --
5     Q    -- policies?
6     MR. OVERHOLT:  You can answer that.
7     A    Yes.
8     Q    And has Internal Affairs issued a report
9 whether the officers' actions were consistent or
10 inconsistent with IMPD policies?
11     MR. OVERHOLT:  You can answer as to the status
12     of the investigation, as to whether it's complete
13     or incomplete.
14     A    Internal Affairs has not completed its
15 investigation.
16     Q    Have they issued a report with respect to any
17 conclusions about whether the officers' actions were
18 consistent or inconsistent with IMPD policies?
19     MR. OVERHOLT:  You can answer whether there is
20     a report that exists.
21     A    There is not a finalized report that exists.
22     Q    Is there an interim report?
23     MR. OVERHOLT:  You can answer that.
24     A    Yes.
25     Q    Okay.  And you've seen that.

1  CERTIFICATE OF OATH
2
3
4  STATE OF INDIANA)
5  COUNTY OF HENDRICKS)
6
7
8          I, ANDREA KOMARIDIS WRAY, the undersigned
9  authority, certify that the above-named witness
10 personally appeared before me and was duly sworn.
11
12
13
14         WITNESS my hand and official seal this 4th day
15 of April, 2023.
16
17
18
19
20
21                                 _____
                                   ANDREA KOMARIDIS WRAY
22                                 NOTARY PUBLIC
                                   COMMISSION NUMBER NP0743903
23                                 COMMISSION EXPIRES 09/25/2030
24
25

1      CERTIFICATE OF REPORTER
2
       STATE OF INDIANA)
3
       COUNTY OF HENDRICKS)
4
5          I, ANDREA KOMARIDIS WRAY, Court Reporter,
6  certify that the foregoing proceedings were taken before
7  me at the time and place therein designated; that my
8  shorthand notes were thereafter translated under my
9  supervision; and the foregoing pages, numbered 1 through
10 42, are a true and correct record of the aforesaid
11 proceedings.
12
13         I further certify that I am not a relative,
14 employee, attorney or counsel of any of the parties, nor
15 am I a relative or employee of any of the parties'
16 attorney or counsel connected with the action, nor am I
17 financially interested in the action.
18
           DATED this 4th day of April, 2023.
19
20
21                    *[signature]*

                       _____
22                     ANDREA KOMARIDIS WRAY
                       NOTARY PUBLIC
23                     COMMISSION NUMBER NP0743903
                       COMMISSION EXPIRES 09/25/2030
24
25

Page 56

```
                    DEPOSITION REVIEW
                  CERTIFICATION OF WITNESS

     ASSIGNMENT REFERENCE NO: 5802179
     CASE NAME: The Estate Of Herman Whitfield, III v. The City
Of Indianapolis
     DATE OF DEPOSITION: 3/22/2023
     WITNESS' NAME: Catherine Cummings

     In accordance with the Rules of Civil
Procedure, I have read the entire transcript of
my testimony or it has been read to me.

     I have made no changes to the testimony
as transcribed by the court reporter.

4.28.2023                    [signature]
Date                         Catherine Cummings

     Sworn to and subscribed before me, a
Notary Public in and for the State and County,
the referenced witness did personally appear
and acknowledge that:

     They have read the transcript;
     They signed the foregoing Sworn
          Statement; and
     Their execution of this Statement is of
          their free act and deed.

     I have affixed my name and official seal
this _____ day of_____, 20____.

     _____
     Notary Public

     _____
     Commission Expiration Date
```