UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE ESTATE OF HERMAN WHITFIELD, III,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 1:22-cv-01246-SEB-MJD
    )
THE CITY OF INDIANAPOLIS, et al.,    )
    )
    Defendants.    )

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Plaintiff's Motion to Compel Discovery from
Defendant City of Indianapolis ("the City"). [Dkt. 83.] The motion is fully briefed, and the
Court held a hearing on the motion, after which the Court ordered the City to provide additional
information. *See* [Dkt. 97]. For the reasons set forth below, the motion is **GRANTED IN
PART** and **DENIED IN PART**.

## I. Background

This case arises out of the death of Herman Whitfield III, which occurred while the six
Defendant police officers were taking him into custody on April 25, 2022. Plaintiff asserts a
Fourth Amendment excessive force claim and state law claims of battery and negligence.

On April 13, 2023, two of the Defendant officers, Steven Sanchez and Adam Ahmad,
were indicted on several felonies, including involuntary manslaughter and reckless homicide.
No indictments were issued as to the other Defendant officers. The criminal cases against
Sanchez and Ahmad are proceeding in state court in Marion County, Indiana.

Shortly after the indictments, Defendants Sanchez and Ahmad moved to stay this case in
its entirety pending the resolution of the criminal charges against them. [Dkt. 67.] On June 1,

2023, the Court denied the request to stay the case, but stayed all written discovery directed to Sanchez and Ahmad, as well as their depositions, until the conclusion of the criminal proceedings.  [Dkt. 76.]

In addition to the criminal investigation, the Indianapolis Metropolitan Police Department ("IMPD") conducted an internal affairs investigation into Whitfield's death.  That investigation is complete as to all of the Defendant officers except Sanchez.  Because Sanchez used his taser during the incident, he must appear before IMPD's Use of Force Review Board, but that will not take place until the criminal charges against him are resolved.  [Dkt. 89-8 at 2.]

## II.  Discussion

The discovery dispute at issue in the instant motion evolved considerably during the course of the briefing of the motion.  On June 28, 2023, when the motion was filed, the City was withholding numerous documents on the grounds that they were protected by the law enforcement investigatory and deliberative process privileges.  The City also had instructed two witnesses, Deputy Chief Adams and Deputy Chief Cummings, not to answer certain questions during depositions based on the same privilege assertions.  However, as Plaintiff notes in its motion, on that date "counsel for Defendant City communicated to Plaintiff's undersigned counsel that the City intends to produce in the next several weeks much of the discovery previously withheld, but will likely continue to withhold other discovery covered by this motion."[1]  [Dkt. 83 at 1 n.1.]

_____

[1] Given this communication, it would have been prudent for Plaintiff to wait to file the instant motion until after the City's production, so that the actual dispute between the parties would have been more clearly defined when the motion was filed.

Indeed, by the time the City filed its response to the instant motion on July 26, 2023, the City had committed to making a supplemental document production and withdrawing its privilege claims as to many of the documents at issue.  The reason for the City's change of position was the fact that the criminal and internal affairs investigations were largely complete.  The City's response brief states that it is now withholding only a "handful" of documents, which it describes generally as "Internal Affairs materials related to Officers Ahmad and Sanchez, text communications with Officers Ahmad and Sanchez, case interview notes, and Blue Team materials" and which it argues "fit squarely within the law enforcement investigatory and deliberative process privileges or Officer Ahmad's and Officer Sanchez's Fifth Amendment rights." [Dkt. 89 at 2, 12.]  The City also "does not object to re-presenting [Deputy Chief Adams and Deputy Chief Cummings] for a limited-purpose deposition related to the questions and subject areas that were objected to in March 2023." *Id.* at 13.  However, "any resumption of those depositions must not delve into the issue involving the indicted officers or the pending IA investigation as it relates to Officers Ahmad and Sanchez while their criminal cases are pending." *Id.*

Plaintiff's reply brief narrows the dispute even further.  Plaintiff notes that

during the Court's status conference on June 15, 2023, Plaintiff's undersigned counsel broached the subject of the two officers' compelled IA statements, and offered the concession that the statements should be considered as covered by the Court's existing stay.  Hence, Plaintiff does not contest the City's withholding of these two documents.

[Dkt. 92 at 3.]

3

The Court ordered the City to provide all of the withheld documents for *in camera* review.[2]  Having reviewed the documents provided by the City, the Court determines that Plaintiff's concession encompasses the following documents:  (1) CITY_005141 (audio recording of Ahmad's statement); (2) CITY_005063 to CITY_005085 (transcript of Ahmad's statement); (3) CITY_005017 (audio recording of Sanchez's statement); (4) CITY_005086 to CITY_005105 (transcript of Sanchez's statement); (5) CITY_005037 to CITY_5040 (notes taken during Ahmad's statement); (6) CITY_005032 to CITY_5036 (notes taken during Sanchez's interview); and (7) CITY_004996[3] to CITY_005002 (additional documents relating to Sanchez's interview).  Accordingly, those seven documents need not be produced until after the stay is lifted.  In addition, CITY_005113 through CITY_005116, and CITY_004980 through CITY_004983, may be redacted to remove the summaries of Ahmad's statement and Sanchez's statement.

Two of the withheld documents, CITY_005031 and CITY_004806, consist of the letters sent to Sanchez and Ahmad setting up their internal affairs interviews.  Those documents are simply not privileged and should be produced.

---

[2] The City produced sixteen withheld documents for *in camera* review.  In addition, the City inexplicably included two body camera videos on its list of withheld documents submitted for *in camera* review.  The City has since confirmed that those videos were previously produced to Plaintiff pursuant to the Court's Order, [Dkt. 49], and should not have been submitted for review. [Dkt. 99 at 2.]

[3] The privilege log lists CITY_004994 to CITY_005002, but the document provided for *in camera* review starts at CITY_004996.  The City has confirmed that CITY_004994 and CITY_004995 already have been produced to Plaintiff.  [Dkt. 99 at 2.]

## A.  The Documents Remaining at Issue

Of the documents provided by the City for *in camera* review, the following documents or

portions thereof remain at issue:

| | Bates Number | Filename |
|---|---|---|
| 1 | Redacted portions[4] of CITY_005110-CITY_005111; CITY_005113-CITY_005123; CITY_005125; CITY_005127 (redacted as set forth above) | Printable Report _ IMPD BlueTeam NextGen.pdf |
| 2 | CITY_005051-CITY_005054 | Officer Bull Interview 050422.pdf |
| 3 | CITY_005055-CITY_005062 | Officer Clark Interview notes 050622.pdf |
| 4 | CITY_005106-CITY_005108 | Teams Case Notes.docx |
| 5 | CITY_005046-CITY_005050 | Officer Virt Interview notes 050422.pdf |
| 6 | CITY_005041-CITY_005045 | Officer Mathew Interview notes 050422.pdf |
| 7 | Redacted portions of CITY_004976-CITY_004977; CITY_004980-CITY_004990; CITY_004992-CITY_004993 | Blue Team Summary.pdf |

The City asserts the law enforcement investigatory privilege, the deliberative process privilege,

and "5th Amendment" as to each of these documents.  The City may not assert the Fifth

Amendment rights of Sanchez and Ahmad on their behalf, and given that none of the remaining

documents involve compelled statements made by them—with the exception of the portions of

CITY_005113 through CITY_005116 and CITY_004980 through CITY_004983, which may be

redacted as noted above—the officers also could not assert those rights as to those documents

---

[4] The City has produced redacted versions of certain documents to Plaintiff, but withheld the redacted portions.

themselves.  The Court therefore will examine the application of the law enforcement

investigatory privilege and the deliberative process privilege to the withheld documents.

### B.  Law Enforcement Investigatory Privilege

With regard to the law enforcement investigatory privilege, the parties agree on the

applicable law, but disagree on its application in this case.

> The law enforcement investigatory privilege is a qualified common law privilege
> that protects civil and criminal law enforcement investigatory files from civil
> discovery and is incorporated under Rule 26(b).  [*Jones v. City of Indianapolis,*
> 216 F.R.D. 440, 443-44 (S.D. Ind. 2003).]  The purpose of the privilege is to
> "prevent disclosure of law enforcement techniques and procedures, to preserve
> the confidentiality of sources, to protect witness and law enforcement personnel,
> to safeguard privacy of individuals involved in an investigation, and otherwise
> prevent interference with an investigation."  *Id.* at 444.  The law enforcement
> investigatory privilege is not absolute; rather, it may be overridden in appropriate
> cases by the need for the privileged materials.  *Id.* . . . .  Courts must balance the
> public interest in protecting police investigations against the needs of plaintiffs in
> civil matters.

*Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 205-06 (S.D. Ind. 2012).  In order to determine

whether the privilege should prevent discovery of a particular document, courts often consider a

ten factor balancing test first articulated in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D. Pa.

1973), and the parties agree that is the appropriate approach in this case.

> The court has considerable leeway weighing these factors in the undertaking of
> the essential balancing process and the nature of the case presented may warrant
> consideration of additional factors.  Moreover, it is appropriate to conduct the
> balancing test for determining whether the law enforcement privilege applies with
> an eye towards disclosure.

*Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998), *aff'd,* 203 F.3d 53 (D.C. Cir. 1999) (citing *In*

*re Sealed Case,* 856 F.2d 268, 272 (D.C. Cir. 1988)).  Ultimately, the determination as to

whether the privilege should prevent disclosure is within the discretion of the district court.

*Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).

The factors set forth in *Frankenhauser* are as follow:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon persons who have given information of having their identities disclosed;

(3) The degree to which governmental self evaluations and consequent program improvement will be chilled by disclosure;

(4) Whether the information sought is factual data or evaluative summary;

(5) Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) Whether the investigation has been completed;

(7) Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) Whether the plaintiff's suit is nonfrivolous and brought in good faith;

(9) Whether the information sought is available through other discovery or from other sources; and

(10) The importance of the information sought to the plaintiff's case.

*Frankenhauser*, 59 F.R.D. 339 at 344.   As the proponent of the privilege, the City bears the burden of justifying application of the investigatory privilege.  *Jones*, 216 F.R.D. at 444.  The City concedes that the documents at issue "would be subject to production once the criminal trials against Officers Ahmad and Sanchez are concluded."  [Dkt. 89 at 25.]  Therefore, the question is whether any of the factors suggest that **a delay** in disclosure would further the purposes of the privilege.  With that in mind, the Court will consider the relevant factors.

The City concedes that the fifth, eighth, and tenth factors weigh in favor of Plaintiff. As to the first two factors, the City has not articulated how "disclosure will thwart governmental processes by discouraging citizens from giving the government information," or how, in this case, there is a risk associated with "the impact upon persons who have given information of having their identities disclosed." While the City states that "[a]s part of the criminal investigation, IMPD interviewed various IMPD and non-IMPD witnesses," [Dkt. 89 at 19] (citing Adams Dep. 22:4-7, 22:14-18), the deposition testimony it cites in support of this statement does not support it. The only potential non-IMPD witnesses of which the Court is aware, after reviewing the documents provided for *in camera* review, are Mr. Whitfield's parents and the medical personnel who were on the scene. These are not the type of witnesses whose identities need protecting or who would be likely to refuse to provide information because that information might be discoverable; indeed, the City's claim that these witnesses "could then be intimidated and/or threatened by various members of the community for providing evidence in a case where the allegations involve police officers engaging in criminal activity," *id.*, is quite perplexing. As to the third factor, the City has failed to demonstrate that "governmental self evaluations and consequent program improvement will be chilled by disclosure" now, when they concede that the disclosure will occur once the criminal proceedings are complete. Finally, as to the fourth factor, with two exceptions, discussed below in the context of the deliberative process privilege, based on the *in camera* review, the Court determines that none of the documents at issue contain "evaluative" material.

With regard to the sixth and seventh factors, the Court agrees with the City that the criminal investigation has not necessarily been completed as to the indicted officers. A criminal investigation does not necessarily stop once an indictment is handed down. In addition, the

internal disciplinary proceedings against Sanchez have not yet been completed. This factor weighs in favor of the City. Again, however, the City does not explain how disclosure of any of the documents would interfere with any additional investigation by the IMPD.[5] Rather, the City's argument centers on the possible effect of the documents becoming public on the criminal proceedings themselves. As Plaintiff points out, however, protecting criminal defendants from unwelcome publicity is not one of the purposes of the law enforcement investigatory privilege.

Finally, as to the ninth factor, whether the information sought is available through other discovery or from other sources, the Court agrees with the City that the factual information contained in the documents is available from other sources, including the officer statements that have already been produced. However, there is some evaluative material that is not otherwise available.

Having reviewed the documents and considered the relevant factors, the Court determines that none of the remaining documents at issue should be withheld based on the law enforcement investigatory privilege, inasmuch as the balance of the factors weighs squarely in favor of disclosure.

## C. Deliberative Process Privilege

While, as noted above, the City lists the deliberative process privilege on its privilege log as to all of the withheld documents, in its brief it argues only that

> the City has shown that the deliberative process privilege applies to the conclusions of the IA investigation, including Blue Team materials, as those documents consist of opinions that are deliberative in nature as they provide

---

[5] Indeed, in the Declaration of Kendale Adams, which the City submitted in support of its law enforcement investigatory privilege claims, the only specific claim that documents could "impair the criminal investigation" relates to the "compelled statements from the officers." [Dkt. 89-7 at 3]. Those statements have now either been produced or are subject to the stay.

analysis of the officers' conduct as to whether that conduct complied with IMPD policies. (Cummings Dep. 19:20-20:21, 22:15-23:16, 32:13-33:1); *see also* (Adams Dep. 23:23-24:9, 33:11-35:15, 74:8-20).

[Dkt. 89 at 26.] The Court will therefore consider whether the deliberative process privilege applies to prevent discovery of those two documents (Documents 1 and 7 in the table above).

As an initial matter, as the parties discuss in their briefs, there is no clear consensus regarding whether the deliberative process privilege even applies to the circumstances of this case. There are two potential issues. The first is whether the privilege applies only to federal government actors. *See Santiago v. City of Chicago*, 2023 WL 5096288, at *6 (N.D. Ill. Aug. 9, 2023) (noting that "[w]hile the Seventh Circuit has not addressed whether the deliberative process privilege applies to state and municipal government actors, it also has not rejected such an application" and ultimately finding persuasive "the decisions of the many district courts within this circuit as well as in other jurisdictions that have applied the deliberative process privilege to state and municipal actors").

The second potential issue is whether the privilege applies to the type of internal affairs/disciplinary decisions at issue in this case.

> Courts have held that the deliberative-process privilege generally does not apply in civil-rights lawsuits to protect from disclosure internal-affairs documents, investigations, and records of witness/police officer statements, as these routinely generated communications are not designed to contribute to the formulation of important public policy.

*Shiflett by & through Davenport v. City of San Leandro*, 2023 WL 4551077, at *5 (N.D. Cal. July 13, 2023) (citing cases); *see also Hughes v. Herbster*, 2021 WL 4123977, at *3 (M.D. Pa. Sept. 9, 2021) (noting that "[t]he deliberative process privilege is generally inapplicable to the defendants' personnel files and to their internal affairs files, complaints, and disciplinary reports"; rather, it applies only to "the limited situation where the documents at issue contribute

10

to the formulation of important public policy or new law") (citing *Charles v. City of New York*, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) (finding in a 42 U.S.C. § 1983 case that the deliberative process privilege did not apply to an internal affairs bureau investigative report and a supervisor's case review memo because the documents contained only factual and investigative information and because "the documents were not created to assist a governmental agency in the formulation of a specific decision on policy," but rather for the "routine process to determine whether disciplinary action was warranted against the defendant officers"); *but see Bayliss v. New Jersey State Police*, 622 F. App'x 182, 185 (3rd Cir. 2015) (applying deliberative process privilege to "Review Sheets" that contain "opinions on the investigation and their recommendations as to whether to impose discipline" on police officers); *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 185 (N.D. Ill. 2019) (applying privilege to certain documents relating to investigation of officer misconduct complaint).

Because the Court resolves the deliberative process issue on other grounds, the Court will assume, without deciding, that it can properly be applied to the type of circumstances present in this case.

The City cites to *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555 (S.D. Ind. 2004), as support for its objection based on the deliberative process privilege. That case sets forth the applicable law as follows:

> In determining whether the deliberative process privilege applies, courts have devised a two-part inquiry: (1) "whether the government has shown that the privilege applies to the documents [or communications] the government seeks to protect;" and (2) "[i]f the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents." *K.L., L.F., and R.B. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997). *See also Indianapolis Minority Contractors Association, Inc. v. Wiley*, 1998 WL 1988826, at *9 (S.D. Ind. 1998). For the

11

government . . . to meet its burden with respect to the first step, three requirements must be met:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

[*K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997)].

*Anderson*, 220 F.R.D. at 561.

Here, the City has submitted the Declaration of Catherine Cummings in support of its assertion of the deliberative process privilege.  Deputy Chief Cummings is the department head over Internal Affairs, so the first requirement is satisfied.  However, the Declaration does not "specifically identify and describe the documents" in question; rather, it speaks only of "any IA materials" generally.  Absent consideration of particular documents, the Declaration could not possibly give "precise and certain reasons for preserving the confidentiality of the documents in question."  In fact, the only reasons given in the Declaration for preserving the confidentiality of the "IA materials" are the Fifth Amendment rights of the indicted officers and the following:

> I am concerned that the release of the IA materials involving these three Officers will impact the pending criminal proceedings involving Officers Ahmad and Sanchez.  When the BWC video was produced to the Plaintiffs in this case, they immediately released it to several media outlets and held a press conference at the same time the grand jury met to consider charges against Officers Ahmad and Sanchez.  Based upon Plaintiffs' actions in this case, I am concerned that Plaintiffs will take similar actions regarding any IA materials they receive that that release of this information at this time will prejudice the rights of these officers to receive a fair and impartial trial.  Furthermore, as noted above, the IA involving Officer Sanchez is not yet finished due to the need to present his involvement to the Use of Force Review Board.

[Dkt. 89-8 at 3.]  But these reasons are not relevant to the deliberative process privilege.  As *Anderson* notes:

> "The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993), *citing NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-52, 95 S. Ct. 1504, 44 L.Ed.2d 29 (1975). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed.2d 87 (2001) (citations omitted). However, there are limitations to this privilege. For the privilege to apply at all, the document—or communication—must be "pre-decisional" and "deliberative." *Becker v. I.R.S.,* 34 F.3d 398, 403 (7th Cir. 1994). Moreover, the privilege "may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Farley,* 11 F.3d at 1389.

*Anderson*, 220 F.R.D. at 560. Here, the reasons given by Deputy Chief Cummings relate to the effect of disclosure on the pending criminal proceedings. She does not set forth any reason related to the ability of the IMPD to deliberate and make decisions. Accordingly, the City has not satisfied its initial burden with regard to the deliberative process privilege. None of the documents at issue may be withheld based on the deliberative process privilege.

### D. Officer Text Messages

Finally, while the parties' briefs mentioned the withholding of officer text messages, none were produced for *in camera* review. Accordingly, the Court ordered the City to produce the following for *in camera* review: "Redacted and unredacted versions of all text messages or portions thereof that have been withheld or redacted as privileged, along with a log of all such text messages." [Dkt. 97.] The City has done so. Although the City's brief does not make it entirely clear, the Court assumes that the indicted officers were compelled to turn over their text messages to the IMPD as part of the IMPD's investigation, just as they were compelled to give statements. The Court therefore determines that the text messages that have been withheld,

City_5130-5140, fall into the category of discovery the Plaintiff has agreed is subject to the stay

pending resolution of the criminal cases against the indicted officers.

### III.  Conclusion

For the reasons set forth above, Plaintiff's motion to compel, [Dkt. 82], is **DENIED** as to

the following documents:  (1) CITY_005141 (audio recording of Ahmad's statement); (2)

CITY_005063 to CITY_005085 (transcript of Ahmad's statement); (3) CITY_005017 (audio

recording of Sanchez's statement); (4) CITY_005086 to CITY_005105 (transcript of Sanchez's

statement); (5) CITY_005037 to CITY_5040 (notes taken during Ahmad's statement); (6)

CITY_005032 to CITY_5036 (notes taken during Sanchez's interview); (7) CITY_004996[6] to

CITY_005002 (additional documents relating to Sanchez's interview); (8) those portions of

CITY_005113 through CITY_005116 and CITY_004980 through CITY_004983 that consist of

summaries of Ahmad's statement and Sanchez's statement; and (9) CITY_5130-5140.  Each of

these documents may be withheld from production until the stay relating to the indicted officers

is lifted.  The motion is **GRANTED** as to the remaining withheld documents.  Those documents

shall be produced to Plaintiff **within seven days of the date of this Order**.

SO ORDERED.

Dated:  30 OCT 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[6] The privilege log lists CITY_004994 to CITY_005002, but the document provided starts at
CITY_004996.  The City has confirmed that CITY_004994 and CITY_004995 already have been
produced to Plaintiff.  [Dkt. 99 at 2.]

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.