# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF ) | |
| HERMAN WHITFIELD, III, ) | |
| ) | |
| PLAINTIFF, ) | NO. 1:22-cv-01246-SEB-MJD |
| ) | |
| v. ) | |
| ) | |
| THE CITY OF INDIANAPOLIS, ) | |
| STEVEN SANCHEZ, ) | |
| ADAM AHMAD, ) | |
| MATTHEW VIRT, ) | |
| DOMINIQUE CLARK, ) | |
| JORDAN BULL, and ) | |
| NICHOLAS MATHEW, ) | |
| ) | |
| DEFENDANTS. ) | |

## PLAINTIFF'S REQUESTS FOR ADMISSIONS
## TO DEFENDANT CITY OF INDIANAPOLIS

**Michael Taylor, Jr.**

**Request No. 26.**   Admit that in 1996, a civil jury found Indianapolis police officers Charles F. Penniston and Edwin M. Aurs responsible for Michael Taylor Jr.'s death.

**Response:**

**Request No. 27.**   Admit that after posttrial motions and appeals, over two million dollars of the Jury's award to Michael Taylor, Jr.'s Estate and his mother was upheld.

**Response:**

**Request No. 28.**   Admit that the only discipline the City of Indianapolis imposed upon its police officers Charles F. Penniston and Edwin M. Aurs related to the death



of Michael Taylor, Jr. was to suspend them for one day each, without pay.

**Response:**

**Request No. 29.**  Admit that IPD Officers Penniston and Aurs remained police officers employed by the City of Indianapolis after Michael Taylor Jr.'s death and after the jury verdict against the City.

**Response:**

### William Jordan

**Request No. 30.**  Admit that on April 4, 2000, City of Indianapolis police officers, including Officer Richard Wilkerson, responded to the Indianapolis residence of William Jordan who had threatened suicide.

**Response:**

**Request No. 31.**  Admit that the officers tackled Mr. Jordan, sprayed his face with chemical spray, and cuffed his hands behind his back and got on top of him as he was face-down on the floor.

**Response:**

**Request No. 32.**  Admit that Mr. Jordan's wife testified both in a deposition at a federal civil rights trial that after her husband had been secured by chemical spray and handcuffed, that Officer Richard Wilkerson struck Mr. Jordan in the back of his head with his flashlight, resulting in a laceration which required multiple staples to close.

**Response:**

2

**Request No. 33.**     Admit that Mr. Jordan filed a federal civil rights lawsuit against the City of Indianapolis and its police officers including Officer Richard Wilkerson alleging the officers used excessive force against him.

**Response:**

**Request No. 34.**     Admit that a federal jury found in favor of Mr. Jordan and against Officer Wilkerson for his use of force against Mr. Jordan.

**Response:**

**Request No. 35.**     Admit that following the jury's verdict, the City of Indianapolis paid Mr. Jordan over $100,000 to settle his lawsuit against the City and Officer Wilkerson.

**Response:**

**Request No. 36.**     Admit that the City of Indianapolis did not impose any discipline on Officer Wilkerson for his use of force against Mr. Jordan.

**Response:**

**Request No. 37.**     Admit that Officer Wilkerson remained employed by the City of Indianapolis as a police officer after the City paid Mr. Jordan over $100,000 to settle his suit against the City and Officer Wilkerson.

**Response:**

### John Leaf

**Request No. 38.**  Admit that in 2001, Officer Ronald Shelnutt of the Marion County Sheriff's Department shot and killed John Leaf, who was in his own bed in his own apartment.

**Response:**

**Request No. 39.**  Admit that the Estate of John Leaf sued Deputy Shelnutt and the Marion County Sheriff's Department for the killing of John Leaf.

**Response:**

**Request No. 40.**  Admit that the Combined City of Indianapolis/Marion County paid the Estate of John Leaf $950,000 to settle its lawsuit for the death of John Leaf.

**Response:**

**Request No. 41.**  Admit that the Marion County Sheriff did not discipline Deputy Shelnutt for his action of shooting to death John Leaf.

**Response:**

**Request No. 42.**  Admit that the Marion County Sheriff, and, subsequently the City of Indianapolis, continued to employ Officer Shelnutt after the Leaf shooting and after the conclusion of the federal civil rights case related to Leaf's death.

**Response:**

**Request No. 43.**  Admit that after the Leaf shooting Officer Shelnutt was accused in at least two separate federal lawsuits of releasing K-9 dogs on individuals who had

surrendered, Warner Berry and Matthew Brackin, both of whom sued Officer Shelnutt and the Marion County Sheriff.

**Response:**

**Request No. 44.** Admit that the Consolidated City of Indianapolis and Marion County paid money to Warner Berry and Matthew Brackin to settle their lawsuits relating to Officer Shelnutt's actions of releasing his police dog on them.

**Response:**

**Request No. 45.** Admit that after the Consolidated City of Indianapolis and Marion County paid Warner Berry and Matthew Brackin money to settle their lawsuits related to Officer Shelnutt's actions of releasing his police dog on them, that the Marion County Sheriff and the City of Indianapolis continued to employ Officer Shelnutt as a police officer.

**Response:**

**Request No. 46.** Admit that the City of Indianapolis did not discipline Officer Shelnutt for releasing his police dog on Warner Berry or Matthew Brackin.

**Response:**

### Joseph Bishop

**Request No. 47.** Admit that on November 13, 2004, IPD Sergeant Steven Atzhorn arrested Joseph Bishop in his home.

**Response:**

**Request No. 48.** Admit that during the arrest Sergeant Steven Atzhorn used physical force and a taser on Joseph Bishop.

**Response:**

**Request No. 49.** Admit that Sergeant Atzhorn lied in a probable cause affidavit, claiming that Joseph Bishop had started the physical confrontation by hitting Sergeant Atzhorn.

**Response:**

**Request No. 50.** Admit that Officer Atzhorn's false charge of battery was the basis for Mr. Bishop's arrest.

**Response:**

**Request No. 51.** Admit that the Marion County Prosecutor filed criminal charges against Mr. Bishop for allegedly battering Sergeant Atzhorn based upon Sergeant Atzhorn's affidavit.

**Response:**

**Request No. 52.** Admit that Sergeant Atzhorn later admitted that he had lied in his probable cause affidavit about Mr. Bishop allegedly hitting him.

**Response:**

**Request No. 53.** Admit that the Marion County Prosecutor dismissed the criminal charge of battery against Mr. Bishop when it learned that Sergeant Atzhorn's affidavit alleging Mr. Bishop had battered him was false.

**Response:**

6

**Request No. 54.** Admit that Joseph Bishop sued Sergeant Atzhorn and the City of Indianapolis over his arrest and injuries caused by Sergeant Atzhorn's actions.

**Response:**

**Request No. 55.** Admit that the City of Indianapolis paid Mr. Bishop $105,000 to settle his lawsuit against IPD Sergeant Steven Atzhorn and the City of Indianapolis.

**Response:**

**Request No. 56.** Admit that the City of Indianapolis did not impose any discipline on Sergeant Steven Atzhorn for his use-of-force during his arrest of Joseph Bishop.

**Response:**

**Request No. 57.** Admit that the City of Indianapolis did not discipline Sergeant Steven Atzhorn for his admitted lying in his probable cause affidavit relating to Mr. Bishop.

**Response:**

**Request No. 58.** Admit that the City of Indianapolis continued to employ Sergeant Atzhorn as a police officer after it was revealed that Sergeant Steven Atzhorn had used force against Mr. Bishop and had lied about Mr. Bishop, falsely claiming Mr. Bishop had battered him.

**Response:**

## Miguel Gutierrez

**Request No. 59.** Admit that on March 8, 2009, Miguel Gutierrez was walking on a sidewalk in Indianapolis, when he was stopped by IMPD Officer Michael R. Kermon.

**Response:**

**Request No. 60.** Admit that IMPD Officer Michael R. Kermon sprayed chemical spray into Miguel Gutierrez's eyes, grabbed Mr. Gutierrez and threw him to the ground, handcuffed him, and charged him with resisting arrest and public intoxication.

**Response:**

**Request No. 61.** Admit that Mr. Gutierrez was detained and when released took a breathalyzer test which showed he had no alcohol in his system.

**Response:**

**Request No. 62.** Admit that the Marion County Prosecutor initially charged Mr. Gutierrez with criminal offenses arising out of his encounter with Officer Kermon, but subsequently dismissed those charges.

**Response:**

**Request No. 63.** Admit that Mr. Gutierrez sued IMPD Officer Michael R. Kermon and the City of Indianapolis alleging that Officer Kermon falsely arrested and used excessive force against Mr. Gutierrez, including kicking him after he was handcuffed and not resisting.

**Response:**

**Request No. 64.**  Admit that the City of Indianapolis paid Mr. Gutierrez $132,500 to settle his lawsuit against IMPD Officer Michael R. Kermon and the City of Indianapolis and, as part of that settlement, agreed to cooperate in having the records associated with Mr. Gutierrez's arrest and prosecution expunged.

**Response:**

**Request No. 65.**  Admit that the City of Indianapolis did not impose any discipline on IMPD Officer Michael R. Kermon for his actions relating to Mr. Gutierrez.

**Response:**

**Request No. 66.**  Admit that after the City paid the settlement to Mr. Gutierrez, that it continued to employ Officer Michael R. Kermon as a police officer.

**Response:**

### Michael Etter

**Request No. 67.**  Admit that on March 25, 2009, City of Indianapolis resident Michael Etter was suspected of having stolen a gaming console.

**Response:**

**Request No. 68.**  Admit that IMPD Officer Mark Rand was a canine officer and was involved in the apprehension of Michael Etter.

**Response:**

9

**Request No. 69.**     Admit that IMPD Officer Mark Rand released his canine on Michael Etter, which bit Mr. Etter and caused injuries.

**Response:**

**Request No. 70.**     Admit that Michael Etter sued Officer Mark Rand and the City of Indianapolis, claiming that he had surrendered to Officer Rand and was lying prone on the ground with his hands above his head prior to Officer Rand releasing his police dog on him.

**Response:**

**Request No. 71.**     Admit that the City of Indianapolis paid Michael Etter $90,000 to settle his lawsuit against IMPD Officer Mark Rand and the City of Indianapolis.

**Response:**

**Request No. 72.**     Admit that the City of Indianapolis did not impose any discipline on Officer Mark Rand for his use of a canine on Michael Etter.

**Response:**

**Request No. 73.**     Admit that Officer Mark Rand remained on the IMPD force after the City of Indianapolis paid Mr. Etter to settle his lawsuit against Officer Rand.

**Response:**

**Willie King**

**Request No. 74.**     Admit that on February 18, 2011, Willie King was arrested by IMPD Officer Jonathan Lawlis while Mr. King was video recording a police encounter with a person in Mr. King's Indianapolis neighborhood.

10

|  |  |
|---|---|
| **Response:** | |

**Request No. 75.** Admit that Officer Lawlis ordered Mr. King to stop video recording the scene and when Mr. King failed to stop Officer Lawlis used physical force against Mr. King while arresting him.

**Response:**

**Request No. 76.** Admit that Mr. King was charged criminally based upon Officer Lawlis' account of his actions, and that in a criminal trial Willie King was found not guilty on all charges, including allegedly resisting arrest.

**Response:**

**Request No. 77.** Admit that Willie King sued Officer Lawlis and the City of Indianapolis for interfering with his right to record the police, for false arrest, and for injuries he sustained while being arrested.

**Response:**

**Request No. 78.** Admit that the City of Indianapolis paid Willie King $200,000 to settle his lawsuit against the City of Indianapolis and Officer Lawlis.

**Response**:

**Request No. 79.** Admit that the City of Indianapolis did not impose any discipline on Officer Jonathan Lawlis for his arrest of and use of force against Willie King.

**Response:**

| | |
|---|---|
| **Request No. 80.** | Admit that Officer Lawlis remained on the IMPD force after the City of Indianapolis paid Mr. King to settle his lawsuit against Officer Lawlis. |
| | **Response:** |

**Luke Woodworth and Samantha Wills**

| | |
|---|---|
| **Request No. 81.** | Admit that on January 1, 2014, IMPD Officer Michael Krebs approached a car in his driveway in which Luke Woodworth and Samantha Wills were seated. |
| | **Response:** |
| **Request No. 82.** | Admit that neither Luke Woodworth and Samantha Wills were armed and neither threatened Officer Krebs. |
| | **Response:** |
| **Request No. 83.** | Admit that Officer Krebs brandished a firearm and that Luke Woodworth and Samantha Wills drove away. |
| | **Response:** |
| **Request No. 84.** | Admit that Officer Krebs fired multiple shots from his gun at Luke Woodworth and Samantha Wills as they drove away, striking their car's windshield and door. |
| | **Response:** |

| | |
|---|---|
| **Request No. 85.** | Admit that Luke Woodworth was criminally charged with Criminal Reckless based on Officer Michael Kreb's report of the incident, a charge which was later dismissed by the Marion County Prosecutor. |
| | **Response:** |
| **Request No. 86.** | Admit that Luke Woodworth and Samantha Willis sued the City of Indianapolis and IMPD Officer Michael Kreb alleging Officer Kreb used excessive force against them. |
| | **Response:** |
| **Request No. 87.** | Admit that the City of Indianapolis did not impose any discipline on IMPD Officer Michael Kreb for his action of shooting at Mr. Woodworth and Ms. Wills. |
| | **Response:** |
| **Request No. 88.** | Admit that the City of Indianapolis paid Luke Woodworth and Samantha Willis $370,000 to settle their lawsuit against Officer Krebs and the City of Indianapolis. |
| | **Response:** |
| **Request No. 89.** | Admit that Officer Michael Kreb remained on the IMPD force after the City of Indianapolis paid Mr. Woodworth and Ms. Wills to settle their lawsuit against the City and Officer Kreb. |
| | **Response:** |

### Marcus Jackson

**Request No. 90.**	Admit that on May 8, 2014, IMPD officers Justin Beaton and Jennifer Gabel kicked and deployed a stun gun on 29-year-old Marcus Jackson.

**Response:**

**Request No. 91.**	Admit that a portion of Jackson's arrest was captured on video, showing Officer Beaton using force against Marcus Jackson as Mr. Jackson lay limp and face-down.

**Response:**

**Request No. 92.**	Admit that the City of Indianapolis did not discipline Officers Beaton and Gabel for their use of force against Marcus Jackson.

**Response:**

**Request No. 93.**	Admit that in 2015, Officer Justin Beaton pled guilty to felony criminal recklessness for firing a gun at his girlfriend which left her seriously injured.

**Response:**

### Joshua Harris

**Request No. 94.**	Admit that on July 2, 2016, Indianapolis resident Joshua Harris called 9-1-1 to report a possible shooting near his home and IMPD Officer Douglas Correll was one of the police officers who responded to that call.

**Response:**

**Request No. 95.**	Admit that Officer Douglas Correll used force against Joshua Harris.

**Response:**

14

**Request No. 96.**   Admit that Officer Douglas Correll's knee strike to Joshua Harris's abdomen crushed Mr. Harris' spleen, which required an operation to remove his spleen and part of his pancreas and small intestines.

**Response:**

**Request No. 97.**   Admit that the City of Indianapolis paid Mr. Harris $380,000 to settle his lawsuit against IMPD Officer Douglas Correll and the City of Indianapolis.

**Response:**

**Request No. 98.**   Admit that the City of Indianapolis did not impose any discipline on IMPD Officer Douglas Correll for his actions related to Mr. Harris.

**Response:**

**Request No. 99.**   Admit that Officer Correll remained employed by the City of Indianapolis after the City of Indianapolis paid Mr. Harris to settle his lawsuit against it and Officer Correll.

**Response:**

**Request No. 100.**   Admit that on August 3, 2023, IMPD Officer Douglas Correll shot 49-year-old Indianapolis resident Gary Harrell in the back as Mr. Harrell was running away from a traffic stop.

**Response:**

Dated: April 2, 2024

    Respectfully submitted,

    */s/ Richard A. Waples*
    Richard A. Waples
    Israel Nunez Cruz
    Attorneys for the Plaintiff

15

Richard A. Waples  
**WAPLES & HANGER**  
410 N. Audubon Road  
Indianapolis, Indiana 46219  
TEL: (317) 357-0903  
FAX: (317) 357-0275  
EMAIL: rwaples@wapleshanger.com

Israel Nunez Cruz  
**CRUZ LAW FIRM**  
148 E. Market Street, Suite 501  
Indianapolis, Indiana 46204  
TEL: (317) 423-9668  
FAX: (317) 423-9677  
EMAIL: icruzlawfirm@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 2, 2024, a copy of this document was sent to counsel of record:

Israel Nunez Cruz at icruzlawfirm@gmail.com

Amy Stewart Johnson at asjohnson@fbtlaw.com

John F. Kautzman at jfk@rkblegalgroup.com

Edward J. Merchant at ejm@rkblegalgroup.com

Brandon E. Beeler at Brandon.Beeler@indy.gov

Anthony W. Overholt at aoverholt@fbtlaw.com

Stephanie V. McGowan at smcgowan@fbtlaw.com

Andrew R. Duncan at ard@rkblegalgroup.com

P. Mason Riley at pmr@rkblegalgroup.com

Caren L. Pollack at cpollack@pollacklawpc.com

Respectfully submitted,

*/s/ Richard A. Waples*  
Richard A. Waples

Attorneys for the Plaintiff

Richard A. Waples  
**WAPLES & HANGER**  
410 N. Audubon Road  
Indianapolis, Indiana 46219  
TEL: (317) 357-0903  
FAX: (317) 357-0275  
EMAIL: rwaples@wapleshanger.com

Israel Nunez Cruz  
**CRUZ LAW FIRM**  
3440 Prospect Street  
Indianapolis, Indiana 46203  
TEL: (317) 423-9668  
FAX: (317) 423-9677  
EMAIL: icruzlawfirm@gmail.com