# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

THE ESTATE OF HERMAN
WHITFIELD, III,

        Plaintiff,

v.

THE CITY OF INDIANAPOLIS,
STEVEN SANCHEZ, ADAM AHMAD,
MATTHEW VIRT, DOMINIQUE
CLARK, JORDAN BULL, and
NICHOLAS MATHEW,

        Defendants.

CASE NO. 1:22-cv-01246 SEB-MJD

## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, The City of Indianapolis, Matthew Virt, Dominique Clark, Jordan Bull and Nicholas Mathew, for their answer to Plaintiff's Second Amended Complaint, state as follows:

### I. Nature of Case

1.    This lawsuit seeks money damages against the City of Indianapolis and several of its police officers whose excessive force caused the death of a man undergoing a mental health crisis.

ANSWER:    Defendants admit this lawsuit seeks money damages against the City of Indianapolis and several of its police officers. Defendants deny the remaining allegations in paragraph 1.

### II. Jurisdiction and Venue

2.    This action is brought pursuant to 42 U.S.C. § 1983 and is premised on violations of the fourth amendment to the United States Constitution.

ANSWER:        Defendants admit Plaintiff filed this action but deny Plaintiff is entitled to relief for the claims brought in this lawsuit.

3.        This Court has original subject matter jurisdiction of the federal questions presented pursuant to 28 U.S.C. §§1331 and 1343.

ANSWER:        Defendants admit the allegation in paragraph 3

4.        The Court has supplemental jurisdiction of the state law claim against Defendant City of Indianapolis pursuant to 42 U.S.C. §1367.

ANSWER:        Defendants admit the allegation in paragraph 4.

5.        Venue is proper in this Court and Division, pursuant to 28 U.S.C. §1391, because the events giving rise to this action occurred in, and the defendants are residents of, Indianapolis, Indiana, which is in the Indianapolis Division of the Southern District of Indiana.

ANSWER:        Defendants admit the allegation in paragraph 5.

III. Parties

6.        Plaintiff the Estate of Herman Whitfield is a legal entity established pursuant to Indiana law and opened in the Marion Superior Court, Probate Division, in order to pursue the legal rights asserted in this case.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.

7.     Defendant City of Indianapolis is located in Marion County, Indiana, and is a political subdivision of the State of Indiana. This municipal defendant is sued on plaintiff's federal claim and on plaintiff's state claim only for compensatory, not punitive, damages.

ANSWER:    Defendants admit the allegations in the first sentence of paragraph 7. The second sentence of paragraph 7 contains a legal averment; thus, no response is necessary. Defendants deny that Plaintiff is entitled to relief for its claims in this lawsuit.

8.     Defendants Steven Sanchez, Adam Ahmad, Matthew Virt, Dominique Clark, Jordan Bull, and Nicholas Mathew are adults and for all times relevant were employed as law enforcement officers by the City of Indianapolis. These defendants are sued only on plaintiff's federal claim and for both compensatory and punitive damages.

ANSWER:    Defendants admit the allegations in the first sentence of paragraph 8. The second sentence of paragraph 8 contains a legal averment; thus, no response is necessary. Defendants deny that Plaintiff is entitled to relief for its claims in this lawsuit.

IV. Facts

9.     On April 25, 2022, Herman Whitfield, III, was at home undergoing a mental health crisis.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10.     Mr. Whitfield's parents telephoned 9-1-1 and asked for an ambulance to come to assist them in obtaining mental health care for their son.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.

11.     Indianapolis police officers Steven Sanchez, Adam Ahmad, Matthew Virt, Dominique Clark, Jordan Bull, and Nicholas Mathew responded to the call.

ANSWER:     Defendants admit the allegations contained in paragraph 11.

12.     The officers came into the house and spoke to Mr. Whitfield, but he did not appear to respond to them and at various times sat on his bed looking down and walked around the first floor of the house.

ANSWER:     Defendants admit they entered the house.  They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 12.

13.     Approximately ten minutes after they arrived, the officers decided to use force to detain Mr. Whitfield.

ANSWER:     Defendants deny the allegations contained in paragraph 13.

14.     Officer Sanchez discharged his taser twice on Mr. Whitfield.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.

15.     Several of the officers grabbed Mr. Whitfield and got on top of him on the floor.

ANSWER:     Defendants admit that several officers touched Mr. Whitfield while he was on the floor.  Defendants deny the remaining allegations in paragraph 15.

16.     The officers handcuffed Mr. Whitfield behind his back while he was on his stomach on the floor.

ANSWER:     Defendants admit that the officers handcuffed Mr. Whitfield behind his back while he was on the floor.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16.

17.     Rather than sit Mr. Whitfield up, the officers left him lying on his stomach.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.

18.     Mr. Whitfield gasped for breath and said repeatedly, "I can't breathe."

ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19.     One of the Officers asked the others if they should get Mr. Whitfield up from his prone position, to which one of the other officers said no.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19.

20.     Mr. Whitfield stopped breathing.

ANSWER:     Defendants admit that at some point on April 24, 2022, Mr. Whitfield stopped breathing.

21.    Ambulance personnel came into the house, and performed CPR on Mr. Whitfield, but he was unresponsive.

ANSWER:    Defendants admit that "ambulance personnel" came into the house. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 21.

22.    Mr. Whitfield died because of the force used against him.

ANSWER:    Defendants deny the allegations contained in paragraph 22

23.    The Marion County Coroner ruled that Mr. Whitfield's death was a homicide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23.

24.    The force used against Mr. Whitfield was unreasonable and excessive.

ANSWER:    Defendants deny the allegations in paragraph 24.

25.    Mr. Whitfield needed professional mental health care, not the use of excessive force.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 regarding Mr. Whitfield's need for mental health care. Defendants deny they used excessive force.

26.    The force used by the individual officers was pursuant to the policy and practice of the City of Indianapolis.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.

27.    The City of Indianapolis has a mental health response unit in its police department trained to handle situations like that experienced by the Whitfields, but pursuant to the City's policy and practice, the unit is only available during some of the hours of the day and not in the early morning hours when it was needed by the Whitfields and other families and individuals undergoing mental health crises.

ANSWER:    Defendants admit that the City of Indianapolis has a behavioral health unit. Defendants deny the remaining allegations in paragraph 27.

28.    Pursuant to the City of Indianapolis's policy and practice, the individual defendant officers did not have the same training and policies and procedures utilized by the City's mental health response unit.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29.    The City of Indianapolis has a longstanding practice of allowing its officers to use excessive force by failing to discipline or discharge its officers who do so.

ANSWER:    Defendants deny the allegations contained in paragraph 29.

30.    Rather than imposing real consequences upon its officers who engage in excessive force, the City of Indianapolis instead reflexively takes the officer's side and attempts to justify the

officer's actions, which continues the victimization of the person harmed and sends the signal to the department's officers that such conduct will not only be tolerated but protected.

ANSWER:    Defendants deny the allegations contained in paragraph 30.

31.    Indeed, even when an officer is proven to have engaged in the unconstitutional use of excessive force, the City ignores the truth, attempts to legitimize the officer's actions, and continues to employ the offending officers allowing them to continue to use excessive force even after it is independently determined that the force used by the officer was excessive and unconstitutional.

ANSWER:    Defendants deny the allegations contained in paragraph 31.

32.    The City's actions prior to and following the inception of this case have demonstrated a pattern of the City failing to adequately respond to its officers' use of excessive force resulting in an increasing number of serious injuries and deaths. See e.g., After uptick in officer-involved shootings, IMPD to receive Department of Justice review, WFYI, Local News, April 16, 2024 ("In 2023 IMPD recorded 18 officer-involved shootings, the highest in recent years.") (available at: https://www.wfyi.org/news/articles/after-uptick-in-officer-involved-shootings-indianapolis-metropolitan-police-to-receive-department-of-justice-review) (last accessed 10/7/24; Community reacts after IMPD has been involved in 5 fatal police shootings in 2 months, Fox59, Sept. 27, 2023 (available at: https://fox59.com/indiana-news/community-reacts-after-impd-has-been-involved-in-5-fatal-police-shootings-in-2-months/ (last accessed 10/7/24).

ANSWER:    Defendants deny the allegations contained in paragraph 32.

33.    Indeed, from 2015 to 2024, there have been at least 106 officer involved shootings. See https://www.indy.gov/activity/officer-involved-shootings.

ANSWER:    Defendants are currently without sufficient information to admit or deny the allegations contained in paragraph 33.


34.    This practice was recently exemplified by the positional asphyxiation deaths of Paul Daniels on September 1, 2018, and of Eleanor Northington on February 7, 2019, and the subsequent lack of disciplinary action against any of the officers who violated IMPD written policy by not moving those two victims to recovery positions after handcuffing them in prone positions, and whose actions resulted not only in the loss of those two lives but also in City either paying money damages or being found liable to do so to both victims' Estates.

ANSWER:    Defendants deny the allegations contained in paragraph 34.


35.    On September 1, 2018, IMPD Officers Stephen Guyunn, George Rossman and Eli Raisovich, handcuffed a mentally impaired Paul Daniels behind his back and placed him a prone position on the ground. The officers handcuffed Mr. Daniels face down on the ground, placed weight on his back, and did not move him as soon as possible to a recovery position. Paul Daniels died of positional asphyxiation. The Estate of Paul Daniels filed a federal civil rights lawsuit over Mr. Daniels' death. The City of Indianapolis paid money to Paul Daniels' Estate to settle its lawsuit against IMPD Officers Stephen Guyunn, George Rossman, and Eli Raisovich and the City of Indianapolis. Despite their actions violating IMPD written policy and resulting in the death of a mentally impaired person, and the City paying money to the Daniels Estate, the City of Indianapolis did not impose any discipline on IMPD Officers Stephen Guyunn, George Rossman, and/or Eli Raisovich, for their actions causing Mr. Daniels' death. Additionally, the City continued to employ

Officers Stephen Guyunn, George Rossman, and/or Eli Raisovich after their policy violations and the death of Mr. Daniels, and after the City paid Mr. Daniels' Estate to settle its federal civil rights suit on or about August 15, 2022. *Estate of Paul Daniels v. City of Indianapolis*, No. 1:20-cv-02280-JRS-MJD, Dkt. 171.

ANSWER:    Defendants admit that the City of Indianapolis settled the claim involving Paul Daniels and that Officers Guyunn, Rossman, and Raisovich remained employed after Mr. Daniels' death. Defendants deny the remaining allegations contained in paragraph 35.

36.    On February 7, 2019, Eleanor Northington was suffering from a mental health crisis in an Indianapolis church. Indianapolis Metropolitan Police Department officers responded to the church and used force to subdue Ms. Northington. The officers handcuffed Ms. Northington face down on the ground and placed weight on her back and did not place her in a recovery position in violation of IMPD Policy on Positional Asphyxiation. Ms. Northington died in part from positional asphyxiation because of the force used against her by the officers. Ms. Northington's Estate brought a federal lawsuit against the City of Indianapolis claiming in part that the officers had battered Ms. Northington. *Estate of Northington v. City of Indianapolis*, No. 1:21-cv-00406-TWP-TAB. A federal jury determined that the officers had battered Ms. Northington and awarded the Estate $500,000 as compensation for the battery. *Id.*, Dkt. 195 (2-23-2024). The officers who the jury determined had battered Ms. Northington were not disciplined by the City of Indianapolis for their violation of IMPD policy resulting in the battery of Ms. Northington. After the federal civil jury found the officers had battered Ms. Northington, the officers involved in the battering of Ms. Northington remained employed by the City of Indianapolis.

ANSWER:    Defendants admit that Ms. Northington died on February 7, 2019 during an interaction with officers, and that a jury awarded plaintiff $500,000 for a battery. Defendants deny the remaining allegations contained in paragraph 36.

37.    This practice of failing to discipline officers who use excessive force was also recently exemplified by the shooting of Anthony Maclin.

ANSWER:    Defendants deny the allegations contained in paragraph 37.

38.    On December 31, 2022, IMPD Officers Carl Chandler and Alexander Gregory repeatedly shot Anthony Maclin while he was sitting in his car in his grandmother's driveway. The shooting was unjustified and resulted in serious bodily injuries. Rather than disciplining the officers for this use of excessive force, the City of Indianapolis has defended the officers' actions in both civil and criminal proceedings and continues to employ them.

ANSWER:    Defendants lack knowledge of the allegations contained in paragraph 38.

39.    The Plaintiffs in *Maclin* also assert that the City of Indianapolis has a long-standing pattern and practice of failing to adequately discipline and/or terminate its officers who engage in excessive force. *Maclin v. City of Indianapolis*, 1:23-cv-01776-JRS-CSW, Dkt. 1, Complaint for Damages and Jury Demand, ¶¶ 81-91 (citing the Whitfield killings as one of several examples of IMPD officers not following training, violating policy, and suffering no real consequences).

ANSWER:    Defendants lack knowledge of the allegations contained in paragraph 39.

40.    The City's deliberate indifference to its officers' use of excessive force resulting in death, evidenced by its failure to discipline or terminate such officers, is in stark contrast to the

City's response to its officers who engage in sexual misconduct, whereby the City immediately suspends the officers and moves to terminate them from employment. See 3 Indy Cops have been Charged with Sex Crimes in 2024, What's going on?, Ryan Murphy, Indianapolis Star, Aug. 28, 2024 ("I'm deeply disappointed and disturbed by the allegations made in the probable cause affidavit," said [IMPD Chief] Bailey. …Bailey has recommended all three men for termination from his department of 1,441 sworn officers.") (available at: https://www.indystar.com/story/news/crime/2024/08/28/indianapolis-police-officers-sex-crimes-allegations-javed-richards-myron-howard-paul-humphrey/74888985007/) (last accessed 10/16/2024).

ANSWER:    Defendants deny the allegations contained in paragraph 40.


41.    These recent examples of the City officers' use of excessive and deadly force and the recent increase in police action shootings follows a long history of the City failing to adequately respond to its officers' use of such force.

ANSWER:    Defendants deny the allegations contained in paragraph 41.


42.    Examples of this long-standing practice include but are not limited to the following victims of the City's officers' use of excessive and deadly force:

A.    **Michael Taylor**: In 1996, a civil jury found Indianapolis police officers Charles F. Penniston and Edwin M. Aurs responsible for Michael Taylor Jr.'s death who was shot in the head while handcuffed in the back of a police car. After posttrial motions and appeals, over two million dollars of the Jury's award to Michael Taylor, Jr.'s Estate and his mother was upheld. The only discipline the City of Indianapolis imposed upon its police officers Charles F. Penniston and Edwin M. Aurs related to the death of Michael Taylor, Jr. was to

12

suspend them for one day each, without pay. IPD Officers Penniston and Aurs remained police officers employed by the City of Indianapolis after Michael Taylor Jr.'s death and after the jury verdict against the City.

B.    **William Jordan**: On April 4, 2000, City of Indianapolis police officers, including Officer Richard Wilkerson, responded to the Indianapolis residence of William Jordan who had threatened suicide. The officers tackled Mr. Jordan, sprayed his face with chemical spray, and cuffed his hands behind his back and got on top of him as he was face-down on the floor. Mr. Jordan's wife testified both in a deposition at a federal civil rights trial that after her husband had been secured by chemical spray and handcuffed, that Officer Richard Wilkerson struck Mr. Jordan in the back of his head with his flashlight, resulting in a laceration which required multiple staples to close. Mr. Jordan filed a federal civil rights lawsuit against the City of Indianapolis and its police officers including Officer Richard Wilkerson alleging the officers used excessive force against him. A federal jury found in favor of Mr. Jordan and against Officer Wilkerson for his use of force against Mr. Jordan. Following the jury's verdict, the City of Indianapolis paid Mr. Jordan over $100,000 to settle his lawsuit against the City and Officer Wilkerson. The City of Indianapolis did not impose any discipline on Officer Wilkerson for his use of force against Mr. Jordan. Officer Wilkerson remained employed by the City of Indianapolis as a police officer after the City paid Mr. Jordan over $100,000 to settle his suit against the City and Officer Wilkerson.

C.    **John Leaf**: In 2001, Officer Ronald Shelnutt of the Marion County Sheriff's Department shot and killed John Leaf, who was in his own bed in his own apartment. The Estate of John Leaf sued Deputy Shelnutt and the Marion County Sheriff's Department for the killing of John Leaf. The Combined City of Indianapolis/Marion County paid the Estate of John Leaf $950,000 to settle its lawsuit for the death of John Leaf. The Marion County

Sheriff did not discipline Deputy Shelnutt for his action of shooting to death John Leaf. The Marion County Sheriff, and, subsequently the City of Indianapolis, continued to employ Officer Shelnutt after the Leaf shooting and after the conclusion of the federal civil rights case related to Leaf's death. After the Leaf shooting Officer Shelnutt was accused in at least two separate federal lawsuits of releasing K-9 dogs on individuals who had surrendered, Warner Berry and Matthew Brackin, both of whom sued Officer Shelnutt and the Marion County Sheriff. The Consolidated City of Indianapolis and Marion County paid money to Warner Berry and Matthew Brackin to settle their lawsuits relating to Officer Shelnutt's actions of releasing his police dog on them. After the Consolidated City of Indianapolis and Marion County paid Warner Berry and Matthew Brackin money to settle their lawsuits related to Officer Shelnutt's actions of releasing his police dog on them, the Marion County Sheriff and the City of Indianapolis continued to employ Officer Shelnutt as a police officer. The City of Indianapolis did not discipline Officer Shelnutt for releasing his police dog on Warner Berry or Matthew Brackin.

D.    **Joseph Bishop**: On November 13, 2004, IPD Sergeant Steven Atzhorn arrested Joseph Bishop in his home. During the arrest Sergeant Steven Atzhorn used physical force and a taser on Joseph Bishop. Sergeant Atzhorn lied in a probable cause affidavit, claiming that Joseph Bishop had started the physical confrontation by hitting Sergeant Atzhorn. Officer Atzhorn's false charge of battery was the basis for Mr. Bishop's arrest. The Marion County Prosecutor filed criminal charges against Mr. Bishop for allegedly battering Sergeant Atzhorn based upon Sergeant Atzhorn's affidavit. Sergeant Atzhorn later admitted that he had lied in his probable cause affidavit about Mr. Bishop allegedly hitting him. The Marion County Prosecutor dismissed the criminal charge of battery against Mr. Bishop when it learned that Sergeant Atzhorn's affidavit alleging Mr. Bishop had battered him was false.

Joseph Bishop sued Sergeant Atzhorn and the City of Indianapolis over his arrest and injuries caused by Sergeant Atzhorn's actions. The City of Indianapolis paid Mr. Bishop $105,000 to settle his lawsuit against IPD Sergeant Steven Atzhorn and the City of Indianapolis. The City of Indianapolis did not impose any discipline on Sergeant Steven Atzhorn for his use-of-force during his arrest of Joseph Bishop. The City of Indianapolis did not discipline Sergeant Steven Atzhorn for his admitted lying in his probable cause affidavit relating to Mr. Bishop. The City of Indianapolis continued to employ Sergeant Atzhorn as a police officer after it was revealed that Sergeant Steven Atzhorn had used force against Mr. Bishop and had lied about Mr. Bishop, falsely claiming Mr. Bishop had battered him.

E.    **Miguel Gutierrez**: On March 8, 2009, Miguel Gutierrez was walking on a sidewalk in Indianapolis, when he was stopped by IMPD Officer Michael R. Kermon. IMPD Officer Michael R. Kermon sprayed chemical spray into Miguel Gutierrez's eyes, grabbed Mr. Gutierrez and threw him to the ground. Mr. Gutierrez was detained and when released took a breathalyzer test which showed he had no alcohol in his system. The Marion County Prosecutor initially charged Mr. Gutierrez with criminal offenses arising out of his encounter with Officer Kermon, but subsequently dismissed those charges. Mr. Gutierrez sued IMPD Officer Michael R. Kermon and the City of Indianapolis alleging that Officer Kermon falsely arrested and used excessive force against Mr. Gutierrez, including kicking him after he was handcuffed and not resisting. The City of Indianapolis paid Mr. Gutierrez $132,500 to settle his lawsuit against IMPD Officer Michael R. Kermon and the City of Indianapolis and, as part of that settlement, agreed to cooperate in having the records associated with Mr. Gutierrez's arrest and prosecution expunged. The City of Indianapolis did not impose any discipline on IMPD Officer Michael R. Kermon for his actions relating to Mr. Gutierrez.

15

After the City of Indianapolis paid the settlement to Mr. Gutierrez, it continued to employ Officer Michael R. Kermon as a police officer.

F.    **Michael Etter**: On March 25, 2009, City of Indianapolis resident Michael Etter was suspected of having stolen a gaming console. IMPD Officer Mark Rand was a canine officer and was involved in the apprehension of Michael Etter. Officer Rand released his canine on Michael Etter, which bit Mr. Etter and caused injuries. Michael Etter sued Officer Mark Rand and the City of Indianapolis, claiming that he had surrendered to Officer Rand and was lying prone on the ground with his hands above his head prior to Officer Rand releasing his police dog on him. The City of Indianapolis paid Michael Etter $90,000 to settle his lawsuit against IMPD Officer Mark Rand and the City of Indianapolis. The City of Indianapolis did not impose any discipline on Officer Mark Rand for his use of a canine on Michael Etter. Officer Mark Rand remained on the IMPD force after the City of Indianapolis paid Mr. Etter to settle his lawsuit against Officer Rand.

G.    **Willie King**: On February 18, 2011, Willie King was arrested by IMPD Officer Jonathan Lawlis while Mr. King was video recording a police encounter with a person in Mr. King's Indianapolis neighborhood. Officer Lawlis ordered Mr. King to stop video recording the scene and when Mr. King failed to stop Officer Lawlis used physical force against Mr. King while arresting him. Mr. King was charged criminally based upon Officer Lawlis' account of his actions, and that following a criminal trial Willie King was found not guilty on all charges, including allegedly resisting arrest. Willie King sued Officer Lawlis and the City of Indianapolis for interfering with his right to record the police, for false arrest, and for injuries he sustained while being arrested. The City of Indianapolis paid Willie King $200,000 to settle his lawsuit against the City of Indianapolis and Officer Lawlis. The City of Indianapolis did not impose any discipline on Officer Jonathan Lawlis for his arrest of and

16

use of force against Willie King. Officer Lawlis remained on the IMPD force after the City of Indianapolis paid Mr. King to settle his lawsuit against Officer Lawlis.

H.     **Luke Woodworth and Samantha Wills**: On January 1, 2014, IMPD Officer Michael Krebs approached a car in his driveway in which Luke Woodworth and Samantha Wills were seated. Neither Luke Woodworth nor Samantha Wills were armed and neither threatened Officer Krebs. Officer Krebs brandished a firearm and Luke Woodworth and Samantha Wills drove away. Officer Krebs fired multiple shots from his gun at Luke Woodworth and Luke Woodworth was criminally charged with Criminal Reckless based on Officer Michael Kreb's report of the incident, a charge which was later dismissed by the Marion County Prosecutor. Luke Woodworth and Samantha Willis sued the City of Indianapolis and IMPD Officer Michael Kreb alleging Officer Kreb used excessive force against them. The City of Indianapolis did not impose any discipline on IMPD Officer Michael Kreb for his action of shooting at Mr. Woodworth and Ms. Wills. The City of Indianapolis paid Luke Woodworth and Samantha Willis $370,000 to settle their lawsuit against Officer Krebs and the City of Indianapolis. Officer Michael Kreb remained on the IMPD force after the City of Indianapolis paid Mr. Woodworth and Ms. Wills to settle their lawsuit against the City and Officer Kreb.

I.     **Marcus Jackson**: On May 8, 2014, IMPD officers Justin Beaton and Jennifer Gabel kicked and deployed a stun gun on 29-year-old Marcus Jackson. A portion of Jackson's arrest was captured on video, showing Officer Beaton using force against Marcus Jackson as Mr. Jackson lay limp and face-down. The City of Indianapolis did not discipline Officers Beaton and Gabel for their use of force against Marcus Jackson. In 2015, Officer Justin Beaton pled guilty to felony criminal recklessness for firing a gun at his girlfriend which left her seriously injured.

J.      **Joshua Harris**: On July 2, 2016, Indianapolis resident Joshua Harris called 9-1-1 to report a possible shooting near his home and IMPD Officer. Officer Correll used force against Joshua Harris. Indeed, Officer Correll's knee strike to Mr. Harris's abdomen crushed Mr. Harris' spleen, which required an operation to remove his spleen and part of his pancreas and small intestines. The City of Indianapolis paid Mr. Harris $380,000 to settle his lawsuit against Officer Douglas Correll and the City of Indianapolis. The City of Indianapolis did not impose any discipline on IMPD Officer Douglas Correll for his actions related to Mr. Harris. Officer Correll remained employed by the City of Indianapolis after the City of Indianapolis paid Mr. Harris to settle his lawsuit against it and Officer Correll. On August 3, 2023, IMPD Officer Douglas Correll shot 49-year-old Indianapolis resident Gary Harrell in the back as Mr. Harrell was running away from a traffic stop.

ANSWER:      Defendants deny the allegations contained in paragraph 42.


43.      The above examples are part of a larger pattern and practice of the City of Indianapolis implicitly condoning its officers' use of excessive force, failing to discipline them and continuing to employ them after their use of excessive force.

ANSWER:      Defendants deny the allegations contained in paragraph 43.


44.      The City's above policies and practices were a responsible cause of how the individual defendant officers interacted with Mr. Whitfield and the fatal result that occurred.

ANSWER:      Defendants deny the allegations contained in paragraph 44.

45.    At all times relevant to this suit, the defendant officers were employed by the City of Indianapolis and acted within the course and scope of their employment as officers of the Indianapolis Metropolitan Police Department.

ANSWER:    Defendants admit the allegations contained in paragraph 45.

46.    At all times relevant to this suit, the officers acted under color of state law.

ANSWER:    Defendants admit the allegations contained in paragraph 46.

V. Claims

47.    The actions of the defendants constituted an unreasonable seizure of Mr. Whitfield by the use of excessive force, in violation of the fourth amendment to the United States, actionable pursuant to 42 U.S.C.§1983.

ANSWER:    Defendants deny the allegations in paragraph 47.

48.    The actions of the defendants constituted a battery in contravention of Indiana common law to which the City of Indianapolis is answerable under the Indiana Tort Claims Act, Ind. Code 34-13-3 *et seq.*

ANSWER:    Defendants deny the allegations in paragraph 48.

49.    The actions of the defendants constituted negligence in contravention of Indiana common law to which the City of Indianapolis is answerable under the Indiana Tort Claims Act, Ind. Code 34-13-3 *et seq.*

ANSWER:    Defendants deny the allegations in paragraph 49.

50.     Defendant City of Indianapolis is legally responsible under Indiana state law for its own actions, and, under the doctrine of *respondeat superior*, for the actions of its employees, including the actions of the officers for their actions in dealing with Mr. Whitfield.

ANSWER:     Paragraph 50 contains a legal averment to which no response is necessary. To the extent a response is necessary, the City of Indianapolis admits it is responsible under Indiana state law for its own actions.


51.     The Estate reserves the right to assert all legal theories of relief which the facts support pursuant to the pleading requirements of Fed. R. Civ. Pro. 8.

ANSWER:     Paragraph 51 contains a legal averment to which no response is necessary.


WHEREFORE, Defendants, by counsel, request that Plaintiff take nothing by way of its complaint and for all other proper relief.

## AFFIRMATIVE DEFENSES

Defendants, The City of Indianapolis, Steven Sanchez, Adam Ahmad, Matthew Virt, Dominique Clark, Jordan Bull and Nicholas Mathew, by counsel, assert the following affirmative defenses:

1.      Defendants deny the allegations in Plaintiff's Complaint that are not specifically admitted.

2.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

3.      To the extent that Plaintiff has received or does receive payments for the alleged injuries and damages, any such payments constitute satisfaction and must be set-off against any recoveries made in this litigation.

4.      The Plaintiff's alleged injuries or damages, if any, may have been proximately caused by pre-existing injuries or conditions.

5.      Defendants are entitled to any statutory and common law immunity applicable to Plaintiff's claims under federal and state law, including qualified immunity and law enforcement immunity.

6.      Plaintiff's claims under *Monell*, if any, are barred to the extent he has failed to properly state a claim.

7.      Defendants are not liable for damages that were caused by third parties.

8.      Defendants' alleged acts or failures to act were not the cause or proximate cause of Plaintiff's alleged damages.

9.      Defendants acted in good faith at all times and had reasonable grounds for believing that their actions did not violate any applicable laws.

21

10.     To the extent that Plaintiff's claims are barred by the statute of limitations, doctrine of laches, waiver, estoppel, justification, fraud, and/or Plaintiff's own actions, inactions, or omissions, such doctrines are pled as defenses to Plaintiff's action.

11.     Indiana Code § 34-51-4-4 bars any claim for prejudgment interest.

12.     The Indiana Tort Claims Act limits the amount of Plaintiff's recovery, if any.

13.     Defendants reserve the right to assert additional affirmative defenses as discovery continues.

FROST BROWN TODD LLC

By:  */ s / Anthony W. Overholt*
     Anthony W. Overholt, #16481-49
     Amy Stewart Johnson, #16257-49
     Stephanie V. McGowan, #30759-49

     *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2024, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Israel Nunez Cruz
Cruz Law Firm
148 E. Market Street, Suite 900
Indianapolis, IN  46204

Richard A. Waples
Waples & Hanger
410 N. Audubon Road
Indianapolis, IN  46219

John P. Lowrey
Sr. Deputy Chief Litigation Counsel
Office of Corporation Counsel
City of Indianapolis
200 E. Washington Street, Suite 1601
Indianapolis, IN  46204

John F. Kautzman
Andrew R. Duncan
P. Mason Riley
RUCKELSHAUS, KAUTZMAN,
BLACKWELL, BEMIS, DUNCAN &
MERCHANT, LLP
135 N. Pennsylvania St., Suite 1600
Indianapolis, IN 46204

Caren L. Pollack
POLLACK LAW FIRM, P.C.
10333 N. Meridian Street, Suite 111
Carmel, IN  46290

/ s /  *Anthony W. Overholt*

FROST BROWN TODD LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
aoverholt@fbtlaw.com
asjohnson@fbtlaw.com
smcgowan@fbtlaw.com

LR02314.0765373  4922-3325-6193v1