# EXHIBIT 10

On April 25, 2022, at 3:23 am, Officers Dominique Clark and Adam Ahmad were dispatched to a disturbance between a father and son at ▮▮▮ Marrison Place. Officers were met at the front door by Herman Whitfield Jr. Herman Whitfield Jr stated his son, Herman Whitfield III, was going through psychosis and said he needed medics. Officer Clark immediately requested medics. Officers Clark and Ahmad observed Herman Whitfield III running through the house. Herman Whitfield III was naked, sweating profusely and speaking incoherently. Officers Ahmad said Herman Whitfield III was bleeding from the mouth. Herman Whitfield Jr. admitted he punched Herman Whitfield III in the mouth while defending his wife, Gladys Whitfield.

Officer Clark attempted to talk to Herman Whitfield III while maintaining distance. Officer Clark tried to convince Herman Whitfield III to get dressed and come outside to the ambulance. Herman Whitfield III told Officer Clark that he was gay and mentioned something about her tone. After several minutes, Officer Clark asked Officer Ahmad to attempt to talk to Herman Whitfield III. Officer Clark did not believe her communication with Herman Whitfield III was effective. Officer Ahmad, Gladys Whitfield, and Herman Whitfield, Jr. attempted to communicate with Herman Whitfield III but were unsuccessful.

Officers Steve Sanchez, Matthew Virt, Jordan Bull, and Nicholas Mathew arrived on the scene several minutes after Officers Ahmad and Clark. Officers Sanchez and Virt advised Officers Clark and Ahmad the medics were staged outside waiting. Gladys Whitfield attempted to communicate with Herman Whitfield III as he was seated on the bed in the back bedroom. Herman Whitfield III suddenly ran from the bedroom toward Gladys Whitfield in the kitchen.

Officers heard a loud noise followed by a scream from Gladys Whitfield. Officers Sanchez and Virt entered the living room and approached the dining room. Herman Whitfield III entered the dining room from the kitchen, looked at both officers, and ran back into the kitchen. Officer Sanchez had his taser in his hand (Serial #X13006AC1). Herman Whitfield III continued to run between the dining room and kitchen, then ran toward Officers Sanchez and Virt. Officer Sanchez deployed his taser (Cartridge Serial #C410AF61E) which struck Herman Whitfield III in the abdomen. Herman Whitfield III fell to the floor and struggled with officers as they attempted to handcuff him.

As Officers Ahmad, Sanchez, Virt, and Mathew struggled to place handcuffs on Herman Whitfield III, he continued to pull away from them and yelled loudly. A tablecloth became entangled around Herman Whitfield III's wrist as he struggled with the officers. Officers Clark and Bull assisted by pulling the tablecloth away from Herman Whitfield III's wrist. This allowed Officers Ahmad, Sanchez, and Virt to handcuff Herman Whitfield III behind his back as he was in the prone position, face down. Officer Clark immediately radioed for the medics to enter the residence. Once Herman Whitfield III was handcuffed, he stopped struggling and yelling. Officers Ahmad, Sanchez, Virt, and Mathew continued to secure Herman Whitfield III in the prone position while Officers Bull and Clark observed. Officer Mathew questioned if Herman Whitfield III should be moved onto his side. Officer Ahmad stated no, and the other officers remained silent.

CITY_004976

Herman Whitfield III was not placed in a recovery position, as required by policy.

IEMS Paramedic Delaney Kniesly and Emergency Medical Technician (EMT) DaJuan Miller responded after being notified and discovered Herman Whitfield III was not breathing and did not have a pulse. With officer's assistance, medics rendered first aid for 13 minutes and 17 seconds prior to Herman Whitfield III being transported to Community East Hospital where doctors pronounced him deceased.

**Body-Worn Camera**

All the involved officers were equipped with body-worn cameras (BWC). Officers Clark and Officer Ahmad were the first on the scene.
- 03:31:08 – BWC Activated when they were dispatched to the run.
- 03:32:20 – Officer Clark and Officer Ahmad arrived.
- 03:33:38 – Officer Clark and Officer Ahmad spoke with Herman Whitfield Jr at the doorway.
- 03:33:51 – Officer Clark requested a medic for Herman Whitfield III at Herman Whitfield Jr's request.
- 03:34:46 – Officer Clark attempted to communicate with Herman Whitfield III as he walked around the house, sweating and naked.
- 03:38:22 – Officer Ahmad took over communication attempts with Herman Whitfield III at the request of Officer Clark.
- 03:42:01 – Herman Whitfield Jr told Officer Ahmad he hit Herman Whitfield III to stop him from attacking his wife, Gladys Whitfield.
- 03:44:59 – Herman Whitfield III pushed past Officer Ahmad and Herman Whitfield Jr and ran into the kitchen.
- 03:45:01 – Gladys Whitfield screamed in the kitchen while Officer Ahmad attempted to calm Herman Whitfield III down.
- 03:45:03 – Officer Sanchez pulled out his Taser while in the living room.
- 03:45:19 – Officer Sanchez pointed the Taser at Herman Whitfield III and deployed taser probes.
- 03:45:30 – Officers began to struggle with Herman Whitfield III while attempting to handcuff him.
- 03:47:02 – Officers placed Herman Whitfield III in handcuffs, while on his stomach with his hands behind his back.
- 03:47:05 – Officer Clark requested the control operator to send the medics.
- 03:48:36 – Officer Mathew asked Officer Ahmad if they should roll Herman Whitfield III to his side. Officer Ahmad said no and replied he did not want Herman Whitfield III to get up again.
- 03:48:39 – IEMS Medics entered the residence and were briefed on the situation by Officer Clark.
- 03:50:07 – IEMS Medics attempted to communicate with Herman Whitfield III but received no response.
- 03:50:50 – IEMS Medics request officers roll Herman Whitfield III onto his back.

- 03:51:28 – IEMS Medics were unable to find a pulse on Herman Whitfield III.
- 03:52:01 – Handcuffs were removed, and Herman Whitfield III was rolled over by officers next to the dining room table.
- 03:52:20 – IEMS and Officers performed CPR on Herman Whitfield III for 13 minutes and 17 seconds.
- 04:07:00 – IFD/IEMS transported Herman Whitfield III from the house to the back of the ambulance.

**Involved Officer's Statements and Body Worn Camera Timeline.**

**Officer Dominique Clark**

On May 6, 2022, Officer Dominique Clark provided a compelled statement to Sergeant Wayne Shelton and Detective David Everman at the Office of Internal Affairs.

Officer Clark stated she was dispatched to ███ Marrison Place on a disturbance between a father and a possible mental-emotional son. Officer Clark stated she responded to the incident and approached the front door. Officer Clark was greeted by the father, Herman Whitfield Jr, who said his son, Herman Whitfield III was suffering a psychosis. Herman Whitfield Jr requested an ambulance for his son. Officer Clark immediately requested an ambulance over her police radio. Officer Clark stated Herman Whitfield III approached the front of the residence while naked, sweating, and yelling incoherently. Herman Whitfield Jr said Herman Whitfield III had not been diagnosed with any mental illness and was not on any narcotics.

Officer Clark entered the residence and began to communicate with Herman Whitfield III while maintaining a distance. Officer Clark stated, she and Officer Ahmad took turns attempting to communicate with Herman Whitfield III for about ten to fifteen minutes. Officer Clark stated she recognized Herman Whitfield III was not willing to converse with her, possibly because she was a female. Officer Clark then asked Officer Ahmad to attempt to speak with Herman Whitfield III. Officer Clark stated they were attempting to convince Herman Whitfield III to get dressed and go outside to the ambulance.

While Officer Ahmad was speaking with Herman Whitfield III, Officers Sanchez, Virt, Bull, and Mathew arrive. Officer Clark heard Gladys Whitfield scream from the kitchen. Officer Clark followed Officer Sanchez and Virt into the living room. Officer Clark observed Herman Whitfield III entering the dining room, which is adjacent to the living room. Officer Clark stated that Herman Whitfield III ran around the dining room and ran toward Officer Sanchez. Officer Clark stated Officer Sanchez then deployed his Taser. When Herman Whitfield III was tased, Officer Clark yelled to the family that what they just heard was a Taser. Once Herman Whitfield III was tased, he fell to the floor. Officer Clark stated Officers Sanchez, Virt, Mathew, and Ahmad all struggled with Herman Whitfield III to get him handcuffed. Officer Clark stated that during the handcuffing of Herman Whitfield III she assisted by holding his hand in an attempt to remove the sheet wrapped around his hands. Officer Clark stated they placed Herman Whitfield III into the prone position, on his stomach with both hands behind his back. Officer Clark stated they secured both of Herman Whitfield III's hands behind his back with two sets of handcuffs.

CITY_004978

After Herman Whitfield III was handcuffed, Officer Clark stated she immediately advised control to send the medic in. Officer Clark stated, she was standing behind the officers and was able to observe Herman Whitfield III handcuffed and laying on his stomach. Officer Clark stated she could not tell if Herman Whitfield III was breathing while waiting on the medics to arrive. Officer Clark stated, "I did not go over and physically check and I was not looking to see if he had a rise and fall, to be honest with you. I was just like, okay, I got the medics coming. He got cuffed. I'm, I'm guessing that they're all catching their breath. So, I did not go over and like inspect or look to see if I could a rise and fall, to be honest." Officer Clark did not observe or hear any other officers check on Herman Whitfield III's condition.

Officer Clark stated she was aware of the term positional asphyxiation. Officer Clark associated positional asphyxiation with leaving a handcuffed person on their stomach, causing a person to stop breathing. Officer Clark did not perceive positional asphyxiation to be a factor because medics were on the scene, and she believed Herman Whitfield III would be moved to the ambulance in a short period of time. Officer Clark stated, "I believe like thought time was going a lot faster than what it actually was." When Officer Clark realized Herman Whitfield III was in medical distress, she ran to the ambulance to retrieve medical equipment. When Officer Clark returned, she assisted medics in rendering aid.

- 03:31:12 – BWC Activated when dispatched to the incident
- 03:32:28 – Arrived on the scene.
- 03:33:38 – Officer Clark and Officer Ahmad spoke with Herman Whitfield Jr at the doorway.
- 03:33:51 – Requested medics to stage outside the residence.
- 03:34:02 – Repeated request for medics.
- 03:34:46 – Attempted communication with Herman Whitfield III.
- 03:38:08 – Requested Officer Ahmad attempt to communicate with Herman Whitfield III.
- 03:40:20 – Gladys Whitfield tells Officer Clark this is Herman Whitfield III's second episode.
- 03:45:20 – Tells parents officers are using a taser.
- 03:45:31 – Stops Gladys Whitfield from approaching officers, by placing her arm in front of her and asking her to back up.
- 03:46:08 – Attempts to assist officers with handcuffing.
- 03:47:00 – Disengages from assisting with handcuffing and asks the control operator to send the medics in.
- 03:47:03 – Stands directly behind Officer Sanchez and Officer Virt.
- 03:47:16 – Tells parents they will get a robe or something to cover Herman Whitfield III up.
- 03:47:21 – Repositions to the left rear of Officer Sanchez and at the head of Herman Whitfield III who is face down on the floor.
- 03:48:00 – Tells parents medics are on the way and Herman Whitfield III is ok.
- 03:48:23 – Tells parents Herman Whitfield III can hear them.
- 03:48:27 – Turns and walks toward the front door of the residence while

CITY_004979

requesting a supervisor for a use of force.

- 03:48:37 – Met medics at the front door and briefs them on the incident.
- 03:49:13 – Escort medics toward officers, Herman Whitfield III, and parents. Tells parents Herman Whitfield is conscious.
- 03:51:38 – Runs out of the residence to the ambulance to assist in grabbing necessary medical equipment.
- 03:52:08 – Returns to the residence with a defibrillator.
- 03:52:30 – Assist medics by preparing a defibrillator.

**Officer Adam Ahmad**

On May 3, 2022, Officer Adam Ahmad provided a compelled statement to Sergeant Wayne Shelton and Detective Lauren Carmack at the Office of Internal Affairs.

Officer Ahmad was dispatched to ███ Marrison Place on a disturbance between a father and a possible mental-emotional son. Officer Ahmad said he responded to the incident and approached the front door. The officers were greeted by the father, Herman Whitfield Jr, who said his son, Herman Whitfield III, was suffering from psychosis. Herman Whitfield Jr requested an ambulance for his son. Officer Ahmad said Herman Whitfield III approached the front of the residence while naked, sweating, and yelling incoherently. Herman Whitfield Jr said Herman Whitfield III had not been diagnosed with any mental illness and was not on any narcotics.

Officer Ahmad entered the residence with Officer Clark. Officer Clark began to communicate with Herman Whitfield III while maintaining a distance. Officer Clark and Officer Ahmad said they took turns attempting to communicate with Herman Whitfield III for about ten to fifteen minutes. Officer Ahmad said he attempted to convince Herman Whitfield III to get dressed and go outside to the ambulance. Officer Ahmad said while attempting to communicate with Herman Whitfield III he noticed he was bleeding from the mouth. Herman Whitfield Jr told Officer Ahmad he punched Herman Whitfield III, before they arrived. Herman Whitfield, Jr. stated he had to defend his wife, Gladys Whitfield, from Herman Whitfield III.

Officer Ahmad stated after approximately ten to fifteen minutes of attempting to communicate with Herman Whitfield III, he suddenly stood up from his bed (in his bedroom) and screamed. Herman Whitfield III pushed past both Officer Ahmad and Herman Whitfield Jr and ran into the kitchen. Officer Ahmad followed Herman Whitfield III into the kitchen and observed him knocking over things. Officer Ahmad stated he told Herman Whitfield III to stop but he ran into the dining room area. Officer Ahmad said he followed Herman Whitfield III from the kitchen into the dining room. Officer Ahmad said he heard Officer Sanchez deploy his Taser. Officer Ahmad said when Herman Whitfield III was tased he fell to the floor. Officer Ahmad stated he and several officers struggled to get Herman Whitfield III handcuffed. Officer Ahmad stated Herman Whitfield III was in the prone position, on his stomach with both hands behind his back. Officer Ahmad stated he maintained control of Herman Whitefield III's right arm while other officers assisted in handcuffing. Officer Ahmad stated Herman Whitfield III was secured with two sets of handcuffs due to his size.

CITY_004980

Officer Ahmad said after Herman Whitfield III was handcuffed, he continued to maintain control of him by placing his left hand under Herman Whitfield III's upper right arm. Officer Ahmad said he stayed in that position until medics arrived. Officer Ahmad explained during the one-to-two-minute wait for medics, no additional force was used against Herman Whitfield III.

Officer Ahmad was asked if he did anything to verify Herman Whitfield III was okay while waiting for medics. Officer Ahmad stated, "We didn't do anything I guess to verify he was okay, but none of us were actually on top of him." Officer Ahmad stated that officers-maintained control of Herman Whitfield III to keep him from getting up and moving around. Officer Ahmad reiterated none of the officers were using weight leverage to hold Herman Whitfield III on the floor. "Yeah. Someone said, 'Turn to him to his side,' and I said, 'I don't wanna' turn him. I don't want him to get up and fight again.' Cause we already told the medics to come in and we already had them on standby."

Officer Ahmad stated he was aware of the term positional asphyxiation. Officer Ahmad stated he believed to avoid positional asphyxiation officers should avoid placing someone in a position where they are facing the ground, so their breathing is not compromised. When Officer Ahmad realized Herman Whitfield III was in medical distress, he assisted medics with chest compressions.

- 03:31:08 – BWC was activated when Officer Ahmad was dispatched to this run.
- 03:32:20 – Officer Ahmad arrived on the scene.
- 03:33:41 – Officer Ahmad and Officer Clark spoke with Herman Whitfield Jr. in the doorway.
- 03:33:54 – Officer Ahmad saw Herman Whitfield III naked and sweating. Herman Whitfield III began walking towards him but stopped. Officer Ahmad asks him if he is ok.
- 03:34:02 – Officer Ahmad attempted to communicate with Herman Whitfield III until Officer Clark takes over.
- 03:38:08 – Officer Ahmad was asked by Officer Clark to take over attempts to communicate with Herman Whitfield III.
- 03:42:01 – Herman Whitfield Jr. tells Officer Ahmad he hit Herman Whitfield III in the mouth to stop him from trying to hurt his mother.
- 03:44:59 – Herman Whitfield III shoves his father, and runs past Officer Ahmad into the kitchen, where Gladys Whitfield screams.
- 03:45:30 – Officer Ahmad assists other officers as they physically struggle with Herman Whitfield III by grabbing his right arm and holding on to it.
- 03:47:00 – Officers place the handcuffs on Herman Whitfield III while he is face down in the prone position. Officer Ahmad continues to hold onto Herman Whitfield III's right arm.
- 03:48:36 – Officer Mathew asked Officer Ahmad if they should roll Herman Whitfield III to his side. Officer Ahmad said no and replied he did not want Herman Whitfield III to get up again.
- 03:50:09 – Officer Ahmad begins removing a white tablecloth from Herman Whitfield III's torso area, while maintaining control of his right arm.

- 03:50:50 – Medics request officers roll Herman Whitfield III over.  Officer Ahmad assist officers with rolling Herman Whitfield III onto his right side.
- 03:51:38 – Both medics attempt to find a pulse on Herman Whitfield III but are unable.
- 03:52:01 – Officer Ahmad assisted officers in removing handcuffs, rolling Herman Whitfield onto his back, and moving him to the middle of the room.
- 03:55:50 – Officer Ahmad assisted in CPR on Herman Whitfield III until relieved at 03:58:30.

**Officer Steven Sanchez**

On May 3, 2022, Officer Steven Sanchez gave a compelled statement to Sergeant Wayne Shelton and Detective George June at the Office of Internal Affairs.

Officer Sanchez responded to ▮▮▮ Marrison Place.  Officer Sanchez responded to the residence and observed the IEMS ambulance parked outside waiting.  Officer Sanchez was briefed by Officer Clark.  Officer Sanchez was told to prepare for a possible physical confrontation with a large, naked male who was possibly mentally emotional.  Officer Sanchez heard Officers Ahmad and Clark attempt to communicate with Herman Whitfield III but heard no response.

Officer Sanchez observed Herman Whitfield III run from the back bedroom, down a short hallway, and into the kitchen.  Officer Sanchez heard the mother, Gladys Whitfield, scream.  Officer Sanchez stated he entered the living room and began to walk toward the dining room. Herman Whitfield III entered the dining room from the kitchen, looked at Officer Sanchez, and retreated to the kitchen.  Officer Sanchez unholstered his Taser and stood in the living room next to Officer Virt.  Herman Whitfield III re-entered the dining room two additional times.  On the third entry into the dining room, Herman Whitfield III looked at Officer Sanchez and began to run toward them both.  Officer Sanchez said Herman Whitfield III was a lot bigger than him and Officer Virt, so he deployed his Taser.  Officer Sanchez said Herman Whitfield III fell but was still thrashing around on the floor.  Officer Sanchez said he did not believe the Taser was effective, so he attempted to complete the cycle of the Taser with a second deployment. Officer Sanchez placed the Taser on Herman Whitfield III's left leg, but this was also not effective.  Officer Sanchez holstered his Taser. Officer Sanchez stated, with the help of Officers Ahmad, Mathew, and Virt, they were able to place Herman Whitfield III in the prone position, on his stomach and handcuff him behind his back.

Officer Sanchez stated no strikes were used to place Herman Whitfield III in handcuffs and once he was handcuffed, he stopped resisting.  Officer Sanchez said Herman Whitfield III was face-down, leaning on his left side with his face turned away from him. Officer Sanchez stated they knew medics were on the scene and had been asked by Officer Clark to enter the residence to check Herman Whitfield III.  Officer Sanchez stated he did not believe Herman Whitfield III was in medical distress and did not observe any signs, in his opinion, that Herman Whitfield III needed immediate medical care.  Officer Sanchez stated he heard Officer Mathew ask if they should roll Herman Whitfield III onto his side. Officer Sanchez stated it was decided not to roll Herman Whitfield III on his side, in case he tried to stand up again.

Officer Sanchez stated he was familiar with the term positional asphyxiation, however, was unable to describe any signs or symptoms of positional asphyxiation.

- 03:36:50 – BWC Activated when Officer Sanchez was dispatched to this run.
- 03:40:35 – Officer Sanchez arrived.
- 03:41:44 – Officer Sanchez entered the residence and spoke with Officer Clark.
- 03:45:01 – Officer Sanchez runs into the living room while pulling out his Taser.
- 03:45:15 – Officer Sanchez points his Taser at Herman Whitfield III. Herman Whitfield III runs back into the kitchen.
- 03:45:19 – Herman Whitfield III re-enters the dining room and runs toward Officer Sanchez. Officer Sanchez deploys his Taser and strikes Herman Whitfield III.
- 03:45:31 – Herman Whitfield III falls to the floor and swings at the officers attempting to take him into custody. Officer Sanchez sparks the Taser and attempts to complete the circuit by touching Herman Whitfield III but is not successful.
- 03:45:40 – Officer Sanchez holsters his Taser and attempts to assist the officers with handcuffing Herman Whitfield III.
- 03:45:45 – Officer Sanchez used his left hand to hold the back of Herman Whitfield III's head face down. He used his right hand to attempt to place handcuffs on Herman Whitfield III as he lay face down in the prone position.
- 03:47:00 – Herman Whitfield III is handcuffed, face down in the prone position.
- 03:47:10 – Officer Sanchez released Herman Whitfield III's head and begins unraveling the white tablecloth from around his arms.
- 03:47:30 – Officer Sanchez placed his right hand on Herman Whitfield III's back.
- 03:47:59 – Officer Sanchez released Herman Whitfield III's back and double checks the handcuffs.
- 03:48:15 – Officer Sanchez placed his right hand on Herman Whitfield III's back or arm.
- 03:48:37 – Officer Mathew ask if they wanted to roll Herman Whitfield III onto his side. Officer Ahmad responded, "No, I don't want him to get up again."
- 03:49:35 – Officer Sanchez removed his right hand from Herman Whitfield III's back.
- 03:50:04 – Officer Sanchez removed the white tablecloth from Herman Whitfield III as medics attempted to get his attention.
- 03:50:41 – Officer Sanchez called out Herman Whitfield III's first name while touching his head but did not receive a response.
- 03:50:55 – Officer Sanchez assisted the officers with rolling Herman Whitfield III to his right side, while attempting to get his attention, but received no response.
- 03:51:10 – Officer Sanchez backed away from Herman Whitfield III to make room for the medics.
- 03:51:51 – Medics checked for a pulse but could not find one on Herman Whitfield III. Officer Sanchez removed the handcuff.
- 03:54:55 – Officer Sanchez relieves an officer and begins Chest Compressions.

CITY_004983

- 03:55:42 – Officer Sanchez is relieved.

**Officer Matthew Virt**

On May 4, 2022, Officer Matthew Virt provided a compelled statement to Sergeant Wayne Shelton and Detective George June at the Office of Internal Affairs.

Officer Virt said he and Officer Sanchez were both assigned to the beat where this incident occurred and noticed out-of-beat officers were dispatched to the incident. Officer Virt responded to the scene and observed the IEMS ambulance parked outside waiting.  Officer Virt was briefed on the situation by Officer Clark. Officer Virt heard Officers Ahmad and Clark attempt to communicate with Herman Whitfield III but received no response.

Officer Virt stated he observed Herman Whitfield III run from the back bedroom, down a short hallway, and into the kitchen.  Officer Virt heard the mother, Gladys Whitfield, scream.  Officer Virt entered the living room and began to walk toward the dining room.  Herman Whitfield III entered the dining room from the kitchen, looked at both Officer Virt and Sanchez, and retreated to the kitchen. Herman Whitfield III re-entered the dining room two additional times.  On the third entry into the dining room, Herman Whitfield III looked at Officer Virt and Sanchez and began to run toward them both. Officer Virt stated Officer Sanchez deployed his taser. After Herman Whitfield III was tased, officers were able to place Herman Whitfield III in the prone position, on his stomach and handcuff him behind his back. During the handcuffing, Officer Virt stated he was kneeling on the left side of Herman Whitfield III attempting to get his left arm and wrist secured. Officer Virt maintained his right knee on his buttock and the small of his back to keep him from being able to swing his arm underneath his body again.  Officer Virt described his use of force as weight leverage. Once Herman Whitfield III was secured, Officer Virt removed his knee from the small of his back.

Officer Virt stated he knew medics were on the scene and had been asked by Officer Clark to enter the residence to check Herman Whitfield III.  Officer Virt did not believe Herman Whitfield III was in medical distress and did not observe any signs in his opinion that he needed immediate medical care.  Officer Virt did not want to move Herman Whitfield III for fear he would begin to resist again.  Officer Virt said, "At one point, the rookie officer that was with us that was in FTO he asked if he should be rolled to his side. And Ahmad responded that he didn't wanna' get up again, which was understandable given the size of the male and the way that we had just had to deal with him running through the home, and the fact that he was highly excited. And we also knew at that, everyone knew at that point that the medics, I take that back I can't say that everyone knew I know that at least three of us knew at that point that the medics were right outside. So, in that moment I was good with, yes, we can wait because the medics are right, they're right outside. As soon as they get in here, they can start, they can start doing their thing."

Positional asphyxiation was not addressed with Officer Virt. Officer Virt checked the bedroom of Herman Whitfield III and located empty packaging of Delta 9 THC Gummies, Tropical Kush Delta 9, Berry Melon Lifter HiXotic 60 mg.

CITY_004984

- 03:39:40 – BWC Activated when Officer Virt was dispatched to this run.
- 03:40:27 – Officer Virt arrived on the scene.
- 03:41:44 – Officer Virt entered the residence and speaks with Officer Clark.
- 03:45:00 – Officer Virt followed Officer Sanchez into the living room.
- 03:45:06 – Officer Virt tells Officer Sanchez to stay in the living room and to keep his taser out.
- 03:45:18 – Officer Virt announced Officer Sanchez had a taser out as Officer Sanchez deployed the taser. Officer Sanchez and Officer Virt moved toward Herman Whitfield III as he fell to the floor.
- 03:45:24 – Officer Virt began moving furniture as Herman Whitfield III was being tasered.
- 03:45:40 – Officer Virt struggled to place Herman Whitfield III in handcuffs. Officer Virt held Herman Whitfield III's left arm behind his back as he lay face down on the floor in the prone position. Additional officers assisted.
- 03:47:00 – Officers were successful with handcuffing Herman Whitfield III behind his back.  Herman Whitfield III is left face down in the prone position.
- 03:47:05 – Officer Virt checked the handcuffs.
- 03:47:17 – Officer Virt holds Herman Whitfield III's right wrist.
- 03:47:52 – Officer Virt released Herman Whitfield III's wrist and loosened his handcuffs.
- 03:48:10 – Officer Virt stands up over Herman Whitfield III as he laid, face down, on the floor, in the prone position with his hands handcuffed behind his back.
- 03:48:24 – Officer Virt tells the parents, Herman Whitfield III can hear them.
- 03:48:34 – Officer Mathew ask officers if they wanted to roll Herman Whitfield III onto his side.  Officer Ahmad said no because he didn't want him to get up again. Officer Virt agreed by saying, "Yeah".
- 03:49:19 – Officer Virt explains the effects of the Taser to Herman Whitfield III's parents while standing over him.
- 03:50:02 – Officer Virt moved household furnishings to make room for the medics.
- 03:50:55 – Officer Virt ask Herman Whitfield III to roll to his side as officers began to roll him over.
- 03:51:29 – Officer Virt grabbed Herman Whitfield III's right ankle and pulled him away from the dining room table.
- 03:52:02 – Officer Virt assisted other officers in pulling Herman Whitfield III by his ankles to a more open space so medics could start CPR.
- 03:55:38 – Officer Virt entered Herman Whitfield III's bedroom with Officer Clark to look for any item that could help medics better diagnose and treat him.
- 03:56:02 – Officer Virt located what he and Officer Clark described as more than one empty package of THC Gummies.
- 03:56:24 – Officer Virt and Officer Clark return to the living room and tell the medics what they located.

**Officer Jordan Bull**

On May 4, 2022, Officer Jordan Bull provided a compelled statement to Sergeant Wayne Shelton and George June at the Office of Internal Affairs.

Officer Bull is a Field Training Officer (FTO) and was training Officer Mathew on April 25, 2022. Officer Bull arrived on the scene and was briefed on the incident by Officer Clark. Officer Bull stated when they arrived, he observed Herman Whitfield III was running around the house and Officer Clark was attempting to calm him. Officer Bull stated he observed Herman Whitfield III run from the back bedroom, down a short hallway, and into the kitchen. Officer Bull stated he heard the mother, Gladys Whitfield, scream. Officer Bull stated he went toward the kitchen, behind Officer Ahmad. Once in the kitchen, Officer Bull heard the taser and when he entered the dining room area, he observed Herman Whitfield III on the floor. Officer Bull stated he was behind Officer Ahmad while the officers were struggling to handcuff Herman Whitfield III. Officer Bull stated he did not use any force to help handcuff Herman Whitfield III, but he tried to pull a white sheet from around his wrist. Officer Bull stated once Herman Whitfield III was handcuffed, he did not see any signs of distress. Officer Bull was asked if he did anything to check on Herman Whitfield III's welfare after he was handcuffed. Officer Bull stated, "I did not. I'm not sure if anyone else did." Officer Bull stated he heard Officer Mathew ask Officer Ahmad, "Should we roll him over?" and Officer Ahmad said, "No." Officer Bull stated he did not know why Officer Ahmad stated no. Officer Bull stated he did not observe any signs of distress from Herman Whitfield III.

Officer Bull stated he was familiar with the term positional asphyxiation. Officer Bull described what he believed to be positional asphyxiation, "Well, I would think it's my own words. Alright. I guess the weight of an individual, or it's keeping them from breathing. Or the way the position is keeping them from breathing." Officer Bull stated if the individual was not struggling, the preferred method to alleviate positional asphyxiation would be to turn an individual on their side. Officer Bull stated he was not sure if Herman Whitfield III was struggling.

- 03:34:51 – BWC Activated when Officer Bull was dispatched to this run.
- 03:35:38 – Officer Bull arrived with Officer Mathew.
- 03:37:00 – Officer Bull follows Officer Mathew to the front door of the residence.
- 03:39:34 – Officer Bull enters the residence and positions himself in the front hallway.
- 03:43:12 – Officer Bull walks back to the front door.
- 03:45:15 – Officer Bull walks through the back hallway, kitchen, and into the dining room.
- 03:46:20 – Officer Bull approaches the Officers as they struggle to restrain Herman Whitfield III.
- 03:46:42 – Officer Bull tells the control operator they have a resistor. Control asks if they need additional Officers to respond and he replies, "negative".
- 03:47:02 – Officer Bull backs away from Officers and Herman Whitfield III. Officer Bull stands directly behind Officer Mathew and Officer Ahmad.
- 03:48:15 – Officer Bull asks Officer Ahmad if he needed to be relieved. Officer Ahmad said no.
- 03:48:30 – Officer Mathew ask officers if they wanted to roll Herman Whitfield III onto his side. Officer Ahmad said no because he didn't want him to get up again.

CITY_004986

- 03:54:20 – Officer Bulls looks into the kitchen for an unidentified substance on the floor, and says it looks like flour.

**Officer Nicholas Mathew**

On May 4, 2022, Officer Nicholas Mathew provided a compelled statement to Sergeant Wayne Shelton and George June at the Office of Internal Affairs.

On April 25, 2022, Officer Nicholas Mathew was in his third rotation of field training and was assigned to FTO Officer Jordan Bull. Officer Mathew and Bull arrived on the scene and were briefed on the incident by Officer Clark. Officer Mathew stated he knew Officers Ahmad and Clark had been attempting negotiations with Herman Whitfield III. Officer Mathew stated as Officer Ahmad was attempting to speak to Herman Whitfield III, he stood up and ran toward his mother in the kitchen. Officer Mathew heard the mother scream, so he followed Officer Ahmad into the kitchen. Officers Mathew, Ahmad, and Herman Whitfield III went into the dining room. Officer Mathew heard Herman Whitfield III being tased and saw him fall to the floor. Officers began to place Herman Whitfield III into handcuffs as he resisted them. Officer Mathew stated he approached Herman Whitfield III as he lay prone on his stomach and grabbed his right leg. Officer Mathew stated he pulled Herman Whitfield III's right leg up and placed his left knee into Herman Whitfield III's right leg to hold it down. Officer Mathew stated once Herman Whitfield III was handcuffed, he stopped resisting. Officer Mathew stated he asked Officer Ahmad, "Should we roll him over?" and Officer Ahmad said, "No." Officer Mathew stated he maintained his control of Herman Whitfield III's legs until medics arrived. Officer Mathew stated he used weight leverage to control Herman Whitfield III's legs.

Officer Mathew was asked why he suggested the officers roll Herman Whitfield III on his side. Officer Mathew stated, "Just my experience with people, mental health crisis, drugs and alcohol. I've learned that it's not good to keep people prone on their belly. It affects their breathing. So, I just made the quick statement, 'Hey, should we roll him onto the side?' Which is called the recovery position. And at that point I was told 'no'." Officer Mathew was controlling Herman Whitfield III's legs and thought other officers were in a better position to assess his medical condition.

Officer Mathew advised during his statement he had prior experience as an EMT for approximately three years with IEMS. When Officer Mathew realized Herman Whitfield III was in medical distress, he immediately assisted the IEMS medics with life-saving measures. The measures included CPR, opening an epinephrine kit, opening and preparing Zoll pads for monitoring rate and compressions, and bagging Herman Whitfield III.

- 03:34:54 – BWC Activated when Officer Mathew was dispatched to this run.
- 03:35:43 – Officer Mathew and Officer Bull arrived on the scene.
- 03:37:02 – Officer Mathew stood at the front door of the residence.
- 03:38:28 – Officer Mathew enters the residence and walks into the living room area.
- 03:41:53 – Officer Mathew walks to the front hallway and stands behind Officer Ahmad.

- 03:45:02 – Officer Mathew follows Officer Ahmad into the kitchen and unholstered his taser.
- 03:45:22 – Officer Mathew points his taser in Herman Whitfield III's direction in the kitchen.
- 03:45:27 – Officer Mathew follows Officer Ahmad into the dining room with his taser out.
- 03:45:45 – Officer Mathew holsters his taser and assists Officers by grabbing and controlling Herman Whitfield III's legs.
- 03:47:00 – Officers handcuffed Herman Whitfield III's hands behind his back, as he lay face down, in the prone position on the floor.
- 03:48:33 – Officer Mathew asks if the officers wanted to leave Herman Whitfield III on his stomach or roll him on his side.  Officer Ahmad said no because he did not want him to get up again.
- 03:50:15 – Officer Mathew maintained control of Herman Whitfield III's legs while he pulled the white tablecloth off.
- 03:50:58 – Officer Mathew released Herman Whitfield III's legs, and assisted Officers in rolling him onto his side.
- 03:52:00 – Officer Mathew assisted Officers in moving Herman Whitfield III away from the dining room table and onto his back.
- 03:53:01 – Officer Mathew aided the medics with chest compression, holding IV bags and applying oxygen.

**Use of Force Opinion of Officer Damon Young**

Officer Damon Young is assigned to the IMPD Training Academy and is recognized by IMPD as a Use of Force Expert. Officer Young's responsibilities include reviewing and providing his opinion on IMPD officers' use of force as it relates to training and policy. Officer Young reviewed BWC footage, officers' statements, and radio traffic to provide an expert opinion regarding Officers Sanchez, Ahmad, Virt, Bull, Clark, and Mathew's use of force during this incident. Following his review of the information, Officer Young provided the following opinion:

"The following is my opinion reference to the de-escalation, uses of force, and aid rendered by the following officers: Adam Ahmad, Jordan Bull, Dominique Clark, Nicholas Mathew, Steve Sanchez, and Matthew Virt during the incident on 04/25/2022. As it relates to this incident, I have reviewed the CAD, involved officer's body camera footage as well as the Internal Affairs interviews of each previously named officer. If new facts are brought to my attention, I reserve the right to re-evaluate and change my opinion as warranted by the new information."

Summary Opinion:

"It is my opinion that the de-escalation tactics and uses of force by all officers followed current training and policy.

My opinion of the aid rendered requires a more careful explanation. Officers were reasonable in their fear about repositioning Whitfield. The current position of the IMPD Training Academy is that this is an acceptable level of risk. In this situation with 6

officers on the scene and a subject who is handcuffed and no longer actively resisting, officers must position the subject in a recovery position and tactically position themselves to mitigate the risk to which they are exposed. The fact that officers knew medical personnel were on the scene and took no immediate action played a significant role in their ability to make this decision. The short duration of time between the conclusion of handcuffing and the arrival of the medics in the house coincides with the time frame that would be reasonable for an officer recover from the hormonal changes that occur during stressful incidents and to make an accurate assessment of Whitfield's condition. This complicated the application of this policy.  It is my opinion that the failure to place Whitfield in a recovery position, with the significant mitigating factor that medics were already on the scene and have a higher level of medical knowledge and skill, was a violation of policy. It should be noted that Recruit Officer Mathew, who is still in training and had only worked with these officers for this one shift, questioned the placement, and he attempted to follow policy but was overruled by a senior officer who was silently supported by 4 other officers.

Analysis and Training Application:

The Officer's first observation of Whitfield was when he walked into view from the back of the house within the first 10 seconds of them at the front door. He appeared naked and sweaty, he was pacing from room to room, and his speech was abrupt and disorganized. Officer Clark properly asked for a medic to respond and stage nearby in accordance with department policy. They were informed that he did not have any psychological diagnosis and that this behavior was not normal for him. The officers inferred through their training and experience that Whitfield was likely reacting to an intoxicating substance, as testified by Officer Clark in her Internal Affairs interview.

Officers observed that Whitfield was bleeding from the mouth. Whitfield's father stated to officers that he punched Whitfield in the face to stop Whitfield from attacking his mother. This indicated that Whitfield had demonstrated a level of violence and unpredictability that led his father to believe force was necessary to control him before the police arrived. This information could have been used in developing probable cause for an attempted battery arrest of Whitfield. Whitfield was no longer a simple medical emergency and posed a demonstrable risk to the safety of his family.

Officers Clark and Ahmad appropriately used time, distance, and barriers while speaking with Whitfield and waiting for additional officers to arrive. They also operated with the "one-voice" principle. Officer Clark maintained a dialogue with him while Officer Ahmad observed and focused on the safety of all involved parties. According to her statement to Internal affairs, when Officer Clark determined that her communications with Whitfield were no longer making progress toward his compliance, she requested that another officer attempt to communicate with him. Officer Ahmad took over and used appropriate communication with him. The other 4 officers also appropriately used time, distance, and barriers by staying out of sight of Whitfield while he sat in his room.

Officer Sanchez deployed his taser when he was face to face with Whitfield who was

running directly at him. Officer Sanchez placed the laser dot, which is used for aiming, below the heart of Whitfield, this follows current taser training, and given Whitfield's size, behavior, and urgency to get him under control, was a reasonable response. Current training on people exhibiting signs of medical distress such as this, including excited delirium, is that the taser is the preferred method of control given that it meets the reasonableness standard and fits within the requirements of proportionality.

The second method of control preferred by current training is that multiple officers are used to take down the subject and then these officers individually isolate and control a limb of the subject. They then would handcuff without prolonged physical exertion and provide a medical evaluation as soon as possible. All officers on the scene utilized this tactic appropriately and communicated effectively with each other.

The training then requires officers to place the handcuffed subject in a recovery position as soon as it is safe and feasible. This training, which was given during the 2020 in-service Use of Force training and was taught during the recruit training academy prior to 2020, is that they are sat upright, or rolled to one side, off their stomach. They may be allowed to stand if it is appropriate. The officers on the scene did not place Whitfield in a recovery position and chose to leave Whitfield on his stomach.  After a prolonged stressful event, especially after a physical altercation, it may take time for a person's mental state to return to a level that optimizes logical thought over individual survival. Our officers are not immune to this. An officer who has just struggled during a physical altercation and experienced this natural hormonal response will take some time to equilibrate and make an accurate assessment of the situation. In this instance, officers had been trying to communicate for more than 10 minutes with Whitfield while he alternated between displaying signs of heightened emotional arousal and very diminished emotional arousal and did not appear to possess communicative ability to match his apparent physical maturity. He appeared to switch between different levels of arousal multiple times. The officers then worked to handcuff Whitfield for 1 minute and 44 seconds after he had been tased. After 1 minute and 32 seconds of being handcuffed Recruit Officer Mathew, who is still in training to be a police officer but had prior experience working as a medic, asked officers if they should reposition Whitfield onto his side. This is, in my opinion, an acceptable amount of time for an officer to compose themselves after this type of intense and acutely stressful event and make an accurate assessment of the situation. If the Officers had waited until this moment and then repositioned Whitfield, then they would have been in compliance with the policy. Officer Ahmad responded, "no, I don't want him to get up again." The medics arrived inside the house approximately 5 seconds after Officer Ahmad's response. The medics did not physically evaluate Whitfield until they had been in the house for 2 minutes and 24 seconds. The medical professionals observed the position Whitfield was in. They were briefed by Officer Clark and did not react in any way to Whitfield being prone. This inaction further compounded any decision that police officers, who have less medical training and experience than the medics on the scene, would make about putting Whitfield into a recovery position.

Multiple Officers stated in their interviews with Internal Affairs that they perceived the

events much faster than the videos indicated. This is understandable given the studies that have come forth about temporal distortion, the perception of time, during stressful events. All the officers stated that medical professionals were on-scene and outside waiting for the scene to be secured. This is a factor that should be considered in the totality of the circumstances and likely played a significant role in decreasing the urgency for officers to interpret the subject's medical condition. The officers deferred to the medics as soon as the medics arrived, which they perceived was almost immediate. During their interviews with Internal Affairs, the officers did not mention the passing of time between the scene is safe and the first medics arriving as significant or lengthy. None of the officers stated that they knew Whitfield was unconscious, the officers who commented on his condition believed that he was simply calmed for the moment."

**Coroner's Report**
The Marion County Coroner's Report was received on July 20, 2022. The report lists the following:

**Cause of Death**
Cardiopulmonary arrest in the setting of law enforcement subdual, prone restraint, and conducted electrical weapon use

**Other Contributing Conditions**
Morbid obesity; Hypertensive cardiovascular disease

**Manner of Death**
Homicide

\* The complete Marion County Coroner's Office Report can be viewed in IAPro under MCCO Report.

## Conclusion

On April 25, 2022, Officers Sanchez, Ahmad, Virt, Clark, Bull, and Mathew responded to a disturbance at ▮ Marrison Place. Officers learned Herman Whitfield III was naked, sweating profusely, and running through the house. Herman Whitfield Jr told officers Herman Whitfield III attempted to assault Gladys Whitfield prior to their arrival and he believed Herman Whitfield III was in a state of psychosis. Officers immediately requested medics to respond and evaluate Herman Whitfield III.

Officers attempted to convince Herman Whitfield III to put clothes on and walk out to the ambulance for approximately 10 minutes and 30 seconds. Herman Whitfield III ran through the house and ran toward Officer Sanchez. Officer Sanchez deployed his taser, which caused Herman Whitfield III to fall to the floor. Herman Whitfield III physically resisted officer's efforts to control

him and place him in handcuffs.  Herman Whitfield III was moved to the prone position and restrained, where he was handcuffed with two sets of handcuffs.  Handcuffs were applied 1 minute and 41 seconds after Officer Sanchez deployed his Taser.  After Herman Whitfield III was handcuffed, Officer Clark requested medics come into the residence.

BWC showed Herman Whitfield III stopped resisting officers immediately after he was handcuffed.  Officer Clark stood behind Officer Sanchez and Officer Virt for 1 minute and 27 seconds in a position to observe Herman Whitfield III lying face down in the prone position. During the 1 minute and 27 seconds, Officer Clark used her radio to request the medics enter the house.  Officer Clark told Herman Whitfield III's parents that he could hear them and that he was ok.  Officer Clark told the parents they would use a robe to cover Herman Whitfield III up when the medics arrive.  Officer Clark then met the medics at the front door of the residence.

After 1 minute and 34 seconds in the prone position, Officer Mathew, who was controlling Herman Whitfield III's legs, suggested Herman Whitfield III be moved to his side.  Officer Ahmad disagreed and stated he did not want Herman Whitfield III to get back up and fight again.  Medics entered the residence three (3) seconds later, and after 2 minutes and 49 seconds, discovered Herman Whitfield III did not have a pulse and was not breathing.  Handcuffs were immediately removed, and Herman Whitfield III was rolled to his back, where medics and officers rendered aid for 13 minutes and 17 seconds prior to Herman Whitfield III being transported to Community East Hospital and pronounced deceased.

A review of the incident by Officer Damon Young concluded Officers Sanchez, Ahmad, Virt, Clark, and Bull did not follow policy or department training when they did not move Herman Whitfield III from the prone position to his side.  Officer Young concluded Officer Mathew's suggestion to move Herman Whitfield III to his side followed policy and training.
Based on the results of this investigation, the Office of Internal Affairs recommends sustained findings for Officers Sanchez, Ahmad, Virt, Clark, and Bull.  Officer Clark stood behind Officer Virt and Officer Sanchez in a position to observe Herman Whitfield III laying on his stomach in handcuffs for 1 minute and 27 seconds.    Officers Ahmad, Sanchez, Virt, and Bull left Herman Whitfield III handcuffed in the prone position for 3 minutes and 51 seconds until medics requested, they roll him over.  Officers Sanchez, Ahmad, Virt, Clark, and Bull did not attempt to facilitate the movement of Herman Whitfield III onto his side to allow less interference with normal breathing, which is a violation of Prisoner Handling, Preliminary Order 8.1 and Use of Force Principles, General Order 1.30.

**Updated Findings from Office of the Chief**
Based upon review and discussion within the Office of the Chief, the findings on Officer Dominique Clark are updated to Exonerated. While we agree Officer Clark was standing near the area where Mr. Whitfield was being detained, we contend she was engaged in the additional duties of scene management and relying on her partners to manage the detention of Mr. Whitfield.

As Officer Clark assisted officers with handcuffing Mr. Whitfield (she removed a sheet wrapped around his wrist), she hears someone ask about their wellbeing over the radio. Once Mr. Whitfield is in handcuffs, Officer Clark responds back via the radio that officers are fine and asks for the medics, staged outside, to enter the house.

CITY_004992

When asked by the Internal Affairs investigator why Mr. Whitfield was not placed into the recovery position, Officer Clark responded she had "backed out" and did not speak up because she thought everyone was catching their breath and "…they're gonna' be right here and we're gonna, ya know get him up and get him on a bed." (pg. 30 D. Clark statement) The timeline indicates Officer Clark had moved away from this area before Recruit Officer Matthew asked if officers wanted to roll Mr. Whitfield onto his side.

When asked if any additional force was used, Officer Clark responds she did not believe anything more than handcuffing and probably weight leverage, but she could not offer more "…because I wasn't, ya know I was more involved with keeping the mom back and making sure that the medics got in and got the right house and all that." (pg. 45 D. Clark statement) It does not appear Officer Clark was attempting to distance herself, rather it appears she was attempting to provide what she was doing in the moment and answer the question asked by the IA investigator as he worked to establish the timeline of the incident.

When asked by the IA investigator about the arrival of medics, Officer Clark misspoke and gave an exact time of 3:52 am. She quickly corrected herself saying she knew medics were in the house because she saw them walk in the door and the time given, 3:52 am, was the time chest compressions were started. She knew this time because she made the note in her notebook, a part of managing the scene.

After Mr. Whitfield was placed into cuffs, Officer Clark continued monitoring the scene by answering questions posed over the radio, requesting the medics to enter the house, asking for a supervisor to respond, and continuing to communicate with the parents. Officers are expected to assume different roles on scenes; and this role assumption happens both formally and informally. On this scene, Officer Clark shifted to scene management and completing necessary tasks while she relied upon the other officers to monitor Mr. Whitfield.

CITY_004993